*Formatted for Electronic Distribution*                                    *Not for Publication*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF VERMONT**

---

In re:

    **R & G Properties, Inc.,**                        **Chapter 11 Case**
          **Debtor.**                            **# 08-10876**

---

Filed & Entered
On Docket
November 21, 2008

| *Appearances:* | Michelle Kainen, Esq. | Heather Z. Cooper, Esq. |
|---|---|---|
| | Kainen Law Office, PC | Kenlan, Schwiebert, Facey &Goss, PC |
| | White River Junction, VT | Rutland, VT |
| | For the Debtor | For the Moving Creditor |
| | | |
| | Kevin Purcell, Esq. | Alison J. Bell, Esq. |
| | Office of the U.S. Trustee | Langrock Sperry & Wool, LLP |
| | Albany, NY | Burlington, VT |
| | For the U.S. Trustee | For the Receiver |

**MEMORANDUM OF DECISION**
**DENYING CREDITOR'S MOTION TO WAIVE §543(D) TURNOVER REQUIREMENT**

In this chapter 11 case, Capmark Finance Inc.[1] ("Capmark") filed an emergency motion seeking to

have a receiver, who was appointed in a pre-petition state court foreclosure action[2], excused from the turnover

requirements of 11 U.S.C. § 543.[3] The Debtor, R & G Properties, Inc., opposed the motion (doc. # 21). After

an evidentiary hearing, the Court granted Capmark's motion and entered an Order waiving the turnover

requirement for the Receiver for a period of 60 days (until November 21, 2008), or until the Court approved a

disclosure statement and plan in this case, whichever came first. (See Order dated September 30, 2008, doc. #

25, p. 4). The 60-day period expired before the Debtor filed a disclosure statement or plan. On November 11,

2008, Capmark filed a motion to continue the status quo and, in particular, to excuse John Wilking (hereafter

"the Receiver") from complying with the Bankruptcy Code turnover requirements, and to allow the Receiver

to "continue his custodial responsibility until a plan of reorganization is confirmed in this case, or for at least

another 90 days" (doc. #  44, p. 8). The Debtor again opposed the motion (doc. # 40), and the Court held

another evidentiary hearing on November 19, 2008.  At the conclusion of that hearing, the Court took the

---

[1]  The full identifying information for this party is as follows: Capmark Finance Inc. f/k/a GMAC Commercial Mortgage Corp., in its capacity as Special Servicer to the Trustee, Wells Fargo Bank, Minnesota, of the Registered Holders of Commercial Mortgage Pass-Through Certificates Series 2001-CF2

[2]  The Debtor owns five mobile home parks in Vermont, all of which have been in the custody and control of the Receiver since September 25, 2006.

[3]  All statutory citations refer to Title 11, United States Code (the "Bankruptcy Code"), unless otherwise indicated.

matter under advisement and directed counsel to file memoranda of law on the threshold question of whether this Court had authority to permit the Receiver to remain in custody of the Debtor's assets at this time, in light of the provision in the state court order limiting the Receiver's term to two years. After due consideration of the evidence presented at the two hearings, the parties' memoranda of law, and the entire record in this case, the Court determines that the Receiver must comply with § 543(b) and immediately turn over custody and control of the property of the Debtor. The prior Order of this Court continuing the Receiver expires today.

## ISSUES PRESENTED

The arguments in favor of, and in opposition to, an order directing the Receiver to turnover the Debtor's property raise three distinct issues: First, can this Court permit a Receiver to remain in possession and control of a debtor's assets beyond the two-year term established by the state court order which appointed the Receiver? Second, if there is authority to allow the Receiver to remain in custody of the Debtor's property, who has the burden of proof as to the Receiver's obligation to turn over the Debtor's property? Third, has that burden of proof been met in this contested matter? The question of how to construe and apply a state court order that appoints a receiver for a limited term appears to be a question of first impression, the question of the burden of proof is unsettled, and the determination of whether the burden of proof has been met turns on the facts proven at the recent evidentiary hearings.

## FACTS

The Background Facts are taken from Capmark's Emergency Motion for Turnover (doc. # 6), which were not contested by the Debtor.[4]

1. R&G Properties, Inc. ("R&G") filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code (the "Code") on September 17, 2008 (the "Petition Date").

2. On November 13, 2000, R&G executed a promissory note to Column Financial, Inc. ("Column"), in the original principal amount of $2,150,000 (the "Note") to evidence a loan Column made to R&G to finance the purchase of five mobile home parks in Vermont (the "Loan").

3. On the same date, R&G executed a Mortgage, Security Agreement and Assignment of Leases and Rents (the "Mortgage" and collectively with the Note and the Loan, the "Loan Documents") to secure the Loan.

4. The Mortgage pledged, inter alia, "all rents, royalties, issues, profits, revenue, income and other benefits." The Mortgage expressly pledged the rents and profits derived from the mobile home parks as security for the Loan.

5. Column assigned its interest in the Loan Documents to Wells Fargo Bank Minnesota, N.A. as Trustee for the Registered Holders of Credit Suisse First Boston Mortgage Securities Corp. Commercial

---

[4] References to exhibits have been omitted.

Mortgage Pass-Through Certifications, Series 2001-CF2 (the "Trustee").

6.   The Loan is part of a securities loan transaction, in which numerous multifamily and commercial property mortgage loans from various lenders in numerous states were pooled by the depositor, Credit Suisse First Boston Mortgage Securities Corp., and transferred to a trust.

7.   Capmark Finance Inc., f/k/a GMAC Commercial Mortgage Corp. ("GMACCM"), services the loans pursuant to a Servicing and Pooling Agreement.

8.   On September 15, 2008, two days prior to the Petition Date, the Washington Superior Court handed down a decision in Capmark Finance Inc. f/k/a GMAC Commercial Mortgage Corp. v. R&G Properties, Inc. et al., Docket No. 3-1-04 Wncv (the "Washington Court Decision.").

9.   The Washington Court Decision details the protracted litigation between Capmark and R&G, including but not limited to, a reference to the Vermont Supreme Court's decision in R&G Properties, Inc. v. Column Financial, Inc. et al., 2008 VT 113 (August 22, 2008).

10.   As part of the litigation between Capmark and R&G, John Wilking has acted as the court-appointed Receiver of the Debtor's five (5) mobile home parks since September 25, 2006.

11.   R&G defaulted under the Loan Documents in 2002 and Capmark provided written notice of default and acceleration on June 23, 2003.

12.   Since R&G defaulted on the Loan, none of the rental income derived from the mobile home parks has been used to pay down the mortgage debt.

13.   Capmark only began to receive payments through John Wilking, the Court appointed receiver. Capmark received the following payments:

| Date | Amount |
|---|---|
| May 1, 2007 | $95,000.00 |
| October 16, 2007 | $50,000.00 |
| January 24, 2008 | $56,000.00 |
| April 15, 2008 | $75,000.00 |
| June 4, 2008 | $15,205.35 |
| July 16, 2008 | $29,155.86 |
| August 5, 2008 | $27,167.29 |

14.   R&G listed Ran Mar Corporation, R&G Properties II, Inc. and R&G Properties III as creditors in its bankruptcy filings. Each of these entities has the same principals as R&G.

## DISCUSSION

The issues raised in this contested matter arise under the bankruptcy provision labeled "Turnover of property by a custodian," which begins with the general mandate that upon the filing of a bankruptcy case any custodian with custody or control of the debtor's assets must turn over all such property and control to the debtor, and then includes an exception under which the custodian may be excused from complying with that

3

turnover requirement, under certain circumstances.  The statute provides, in pertinent part:

    (a)     A custodian with knowledge of the commencement of a case under [the Bankruptcy Code] concerning the debtor may not make any disbursement from, or take any action in the administration of, property of the debtor, proceeds, product, offspring, rents, or profits of such property, or property of the estate, in the possession, custody, or control of such custodian, except such action as is necessary to preserve such property.
       . . . .

    (d)     After notice and a hearing, the bankruptcy court –

        (1)     may excuse compliance with subsection (a), (b), or (c) of this section [prohibiting further disbursements by the receiver, requiring the receiver to turn over property and provide an accounting of all the debtor's property in its possession, or paying /surcharging the receiver, respectively] <u>if the interests of creditors . . . . would be better served by permitting a custodian to continue in possession, custody or control of [the debtor's] property</u>.

11 U.S.C. § 543(a), (d) [emphasis added].

## 1.  Continuation of the Receiver Beyond Term Set in the State Court Order

Although the parties have not presented, and the Court has not found, any case law construing a state court order that appointed a Receiver for a limited term, the language of both the state court order and the pertinent Bankruptcy Code provisions persuades this Court that it is without authority to extend the Receiver's term after it has expired.

On September 25, 2006, the Washington Superior Court entered an "Order Appointing Receiver" based upon a stipulation of the parties (doc. # 44, Ex. A). The Order detailed the responsibilities of the Receiver, and Paragraph 6 of that Order provided as follows:

> The Receiver shall enter, possess, use, operate, manage and control the Mortgaged Properties and shall conduct either personally or through his employees, servants or agents the business thereof, namely, the management, leasing and/or renting units therein for terms not to exceed two years.

Approximately a week before the two year receivership provision was about to expire – on September 17, 2008 – the Debtor filed for relief under chapter 11 of the U.S. Bankruptcy Code.

On September 19, 2008, Capmark filed an emergency motion pursuant to 11 U.S.C. §§ 305 and 543(d) for waiver of the 11 U.S.C. § 543 turnover requirement, and an expedited motion to expedite hearing (doc. ## 6-14). The Court granted the motion and held a three-hour hearing on September 22, 2008 at which the Debtor's Principal, Randy Rouleau, and John Wilking, the Receiver, testified. Over the Debtor's objection, the Court orally granted the relief sought by Capmark. In an Order dated September 30, 2008, the Court memorialized its findings, and allowed Mr. Wilking to "continue to manage and operate the Parks up until and including November 21, 2008, or upon the Court's approval of the Debtor's disclosure statement and proposed plan, whichever is earlier" (doc. # 25, p. 4 ¶ 3). The Order also provided:

> Mr. Wilking's responsibilities and powers shall continue to be exercised in

4

accordance with the terms of the state court order appointing him as Receiver,
a copy of which is attached and incorporated by reference as if set forth in full
herein.

Id., ¶ 4.

On November 12, 2008, Capmark moved to continue the September 30, 2008 Order Waiving the §
543 Turnover Requirement (doc. # 31), along with a motion to expedite consideration of the motion (doc. #
32). The Court granted expedited consideration, issued a scheduling order (doc. # 34) providing that an
evidentiary hearing would take place on November 18, and directed the Debtor to respond to Capmark's
motion by November 14. The Debtor timely interposed its objection to the motion to continue the Receiver
(doc. # 40). A five-and-a-half hour hearing was held on November 18, at which Mr. Rouleau, Mr. Wilking,
and Tom Floyd, an officer of Capmark, testified. At the conclusion of the hearing, the Court requested that the
parties submit memoranda of law on the threshold question of the effect of the September 25, 2008 expiration
of the state court Receiver's two-year term on the continuation of the receivership. Capmark filed its brief on
November 19, 2008 (doc. # 44); the Debtor filed its brief on November 20, 2008 (doc. # 47); and Capmark
filed a reply brief on November 20, 2008 (doc. # 48).

A bankruptcy court has no authority to appoint a receiver. See § 105(b); In re Stratesec, Inc. 324 B.R.
156, 157 (Bankr. D.D.C. 2004). However, a state court appointed receiver is a "custodian" within the meaning
of § 101(11) of the Code and may be permitted to continue in place in a bankruptcy case in certain
circumstances. In re Lizeric Realty Corp., 188 B.R. 499, 506 (Bankr. S.D.N.Y. 1995). Code § 543, entitled
"Turnover of property by a custodian," governs custodians. Subsections 543(a) and (b) acknowledge the
default position under the Code (that a debtor is entitled to custody of its property) and directs a custodian to
turn over the property of the bankruptcy estate to the trustee. In other words, the custodian "is barred from
taking any further action in the administration of the debtor's property and must deliver to the debtor any
assets of the estate in his possession at the time he learns that a bankruptcy case was filed." Id.

Section 543(d)(1) provides an exception to the general turnover rule if the interests of creditors would
be better served by permitting the custodian to continue in possession, custody, or control of such property.
This exception is a "modified abstention provision, akin to the abstention provisions found in section 305 of
the Code," and whether the Court decides to apply § 543(d)(1) is based on the exercise of its discretion. Dill
v. Dime Savings Bank, PSB (In re Dill), 163 B.R. 221, 225 (E.D.N.Y. 1994). Under this provision, once a
bankruptcy case has commenced, the court "may temporarily permit a receiver to remain in place while the
court decides whether to abstain to the receivership proceeding, or instead require the receiver to turn over the
property of the estate to the trustee (or to the debtor-in-possession if no trustee has been appointed)."
Stratesec, 324 B.R. at 157.

The question here is what authority does this Court have to extend the state court receiver's two-year

5

appointment (beyond the 60-days it has already been extended, as will be discussed below). None of the cases this Court has found that discuss § 543 in relation to state court-appointed receivers mention (and apparently do not contain) a time limitation on the state court receiver's term. Neither party has presented such a case either. Given the absence of case law on this point, the Court is left to reason by analogy. This Court accepts the baseline rule proffered in In re 400 Madison Ave. Ltd. P'ship, 213 B.R. 888, 895 (Bankr. S.D.N.Y. 1997), where the bankruptcy court stated: "The receiver left in possession by the bankruptcy court has no role in the bankruptcy case other than to manage and preserve the property in his charge in accordance with the orders governing his appointment." Id. at 895 (emphasis added). Stated another way, the bankruptcy court does not have leave to change the scope of responsibilities placed upon the receiver by the state court except where specifically mandated by the Bankruptcy Code (e.g., §§ 327, 330, 331, 543(b)). To illustrate, if a party who is a defendant in a foreclosure action in state court owns two buildings and the state court appoints a receiver over one of the buildings, once the matter arrives in bankruptcy court and both buildings become part of the estate, the bankruptcy court cannot disregard the state court order and expand the receiver-custodian's responsibilities under § 543(d)(1) to give control over both properties. That would counter the "full faith and credit" that federal courts are required to give state judicial proceedings. See 28 U.S.C. § 1738. In the same way that the bankruptcy court may not expand the scope of a receiver/custodian's duties from those provided in the state court receivership order, it may not expand the term of a state court receiver's role, if a term had been included in that order. While unusual, the time limit was a term of the stipulation of the parties in the state proceeding and is part of the state court order specifying appointment of the Receiver here.

In its brief, Capmark observes that it has found no reported case where a court "specifically considers the terms of the state court orders of the underlying custodian juxtaposed to the Bankruptcy Court's clearly delineated powers in § 543, or otherwise" (doc. # 44 p. 4). It argues that, "[u]nder § 543, the Bankruptcy Court neither approves nor adopts the state court order appointing the custodian, but rather considers, in light of certain factors, whether the best interests of the Debtor's creditors would be served by excusing compliance with the section 543 turnover requirements." Id.

This Court rejects the approach that the terms of the underlying state court order regarding the scope and term limit of the receiver are somehow cut loose from their moorings once the matter enters bankruptcy court and § 543 is applied. On September 25, 2008, the state court receivership expired and, at the present moment, there is no receivership in state court that this Court can continue in this Court under § 543(d).[5] While § 543 imposes no time limit on the custodian's term, it presupposes the existence of a receiver in state

---

[5] In its brief, Capmark notes that a state court Entry Order dated September 15, 2008 made no reference to a termination of the receivership (doc. # 44, p. 2). The absence of any reference proves nothing. This Court will not infer that the state court somehow intended to disregard or revoke its previous imposition of a two-year term for the receiver. See doc. # 30, p. 20, where Capmark counsel acknowledges that the ancillary orders issued by the state court clarifying the receiver's role do "not specifically" address the expiration date of the receiver's employment or state that the receiver would continue in place.

court who temporarily becomes a custodian in bankruptcy court and whose term is continued.

A question arises concerning the effect of this Court's September 30, 2008 Order which excused the state court appointed Receiver from complying with the turnover requirements of § 543, and extended the Receiver's term 60 days, until November 21st. At the points that R&G filed its petition, that Capmark moved for waiver of the turnover requirement, and that the Court heard Capmark's initial arguments and granted the relief sought at the September 22, 2008 hearing, the state court Receiver's term had not expired. In making its ruling, this Court took note of the fact that "on the date the Chapter 11 was filed, there clearly was a custodian in place that meets the criteria of Section 543," and exercised its discretion to have "the receiver . . . stay in place pursuant to the State Court Order" for 60 more days (doc. # 30, pp. 94, 96). The Court expressed concern about the upcoming two year deadline for the Receiver as provided in the state court receivership order (doc. # 30, pp. 19-20) – an argument made by Debtor's counsel (id. at p. 16) – but based the 60-day extension on its equitable powers, pursuant to § 105(a), and on § 108, which allow an extension for nonbankruptcy time limitations. The Court supported that ruling by observing that it was "too early in the case to have the parties or the Court have enough information to be able to sort through all the records and come to a determination that it is in the best interest of creditors to have the debtor resume operations," id. at 95, by assessing the testimony of the witnesses, and by applying the § 543(d) factors, id. at 93-95. None of the parties challenged the basis for that Order, and the Debtor did not appeal the Order. That the Court exercised its discretion and called upon its equitable powers in September does not dictate the result now; it does not change the fact that the state court receivership has expired. The fact that the receiver/custodian remained in place for 60 additional days has no bearing on the lapsing of the Receiver's term in state court, and § 543 cannot revive in this Court what has already died by virtue of a binding state court order. See In re Watkins, 63 B.R. 46, 47 (Bankr. D.Colo. 1986) (noting that the bankruptcy court "cannot revest administration of the Debtor's property in the hands of a receiver whose interest in the property has already terminated. . .")

Further, the parties agree that § 108[6] is not applicable, at least as of the present moment (doc. # 44, pp. 5-6, doc. # 47, p. 2 – noting that § 108 does not apply "at this point in the proceedings"). Even if that statutory provision did apply to extend the term of the state court Receiver (as the only bankruptcy statute that could even roughly apply to extend the term of non-bankruptcy law), the 60-day extension granted at the September

---

[6] § 108, Extension of time, provides in relevant part:

(b) Except as provided in subsection (a) of this section, if applicable nonbankruptcy law, an order entered in a non-bankruptcy proceeding, or an agreement fixes a period within which the debtor . . . may file any pleading, demand, notice, or proof of claim or loss, cure a default, or perform any other similar act, and such period has not expired before the date of the filing of the petition, the trustee may only file, cure, or perform, as the case may be, before the later of –

(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
(2) 60 days after the order for relief.

§ 108(b).

22, 2008 hearing has run its course and § 108 does not provide this Court with the authority to extend the state court deadline beyond those 60 days.

Finally, in its reply brief, Capmark argues, for the first time, that the phrase "terms not to exceed two years" "relates to the 'leasing and/or renting units' and does not explicitly provide that the Receivership shall terminate within two years of its commencement." (doc. # 48). The Court takes issue with this interpretation on a number of grounds. First, if a party raises a new argument in its reply brief, the Court can decide not to consider it because the opposing party may not have adequate time to respond to it. See U.S. v. Pepin, 514 F.3d 193, 202 n. 13 (2d Cir. 2008); Playboy Enterprises, Inc. v. Dumas, 960 F.Supp. 710, 720 n.7 (S.D.N.Y. 1997) (stating "[a]rguments made for the first time in a reply brief need not be considered by a court"). Second, Capmark's brief-in-chief appears to accept the two-year term limitation and argues against applying it, asserting that the provisions of § 543 control (doc. # 44, pp. 4-5). Third, the rule against not considering arguments raised for the first time in a reply brief, especially arguments that counter, in some ways, a party's previously-made arguments, is particularly apt here where Capmark is attempting to introduce some element of ambiguity into the language of paragraph 6 of the state court receivership order, which would require briefing by the Debtor in response, and perhaps the introduction of extrinsic evidence.[7] Given the extreme time restraints on the parties and the Court to decide this issue, the Court declines to address this argument.

Accordingly, the Court holds that it does not have authority to continue the Receiver as custodian under § 543(d) because the two-year term limit set out in the state court order that appointed the Receiver has expired, and the Court must give full faith and credit to the time limitation as provided in that order. Moreover, even if § 108 of the Code could extend the Receiver's term in this Court, that extension has now expired.

2. The Creditor Has the Burden of Proof Under § 543(d)

Even assuming *arguendo* that this Court has the authority to extend the Receiver's term, it would decline to do so because (a) the Debtor is entitled to a presumption that it should remain in possession and control of its assets in order to attempt a reorganization under chapter 11, and (b) the Creditor has failed to rebut the applicability of that presumption in this case by failing to prove by a preponderance of the evidence that the interests of creditors would be better served by permitting the Receiver to remain in possession, custody and control of the Debtor's business assets per § 543(d)(1).

The starting point for analyzing and weighing the evidence presented is who has the burden of proof. There are few cases that address the burden of proof under § 543(d) and those that do lean in favor of allocating the burden to the Creditor. The  primary support for allocating the burden to the debtor arises from

---

[7] The Court does not know which party drafted the state court receivership order. If Capmark drafted it, that would be a further basis for rejecting their argument, as the language would be construed against the drafter.

the well respected bankruptcy treatise, Collier's on Bankruptcy,  ¶ 543.05 (15th ed. rev.). At this point, the

Court has found only one case that allocates the burden to the debtor. See In re Kramer, 96 B.R. 972, 977

(Bankr. D. Neb. 1989). With all due respect to the authors of Collier's, this Court disagrees both with the

treatise's determination as to which party has the burden and how it articulates the content of the burden.

Collier's defines the burden as follows:  "Ít is the debtor's burden to convince the court, by a preponderance

of evidence, that allowing the debtor to take possession of its property will be in the best interests of

creditors." Collier's , 15th ed., ¶ 543.05. Placing the burden on the debtor strikes this Court as inconsistent not

only with the clear language of § 543(d) but also with the longstanding presumption that chapter 11 debtors

should remain in custody and control of their assets.

> Chapter 11 is designed to allow debtor-in-possession to retain management and control
> of debtor's business operations unless a party in interest can prove that the appointment
> of trustee is warranted, and there is a strong presumption that debtor should be permitted
> to remain in possession absent a showing of need for the appointment of trustee.

In re Adelphia Communications Corp., 326 B.R. 610, 655 (Bankr. S.D.N.Y., 2006). Quizzically, Collier's

seems to give the nod to this presumption, for it follows the above allocation of the burden with the

observation, "In this situation, reorganization policy favors debtor or debtor in possession."  If reorganization

policy favors the debtor, why would the burden be on the debtor?  The treatise offers no explanation as to how

one reconciles the policy favoring debtors remaining in possession with the requirement that to do so the

debtor must prove its right to remain in possession, nor does it explain the shift from the statutory language of

the "better serving the interests of creditors" to "serving the best interest of creditors."

This Court is persuaded by those decisions that rely primarily upon the bankruptcy policy favoring

debtors remaining in possession and control of their assets and that place the burden of proof on the party

seeking to allow the custodian to remain in control. See In re Falconridge, LLC, 2007 WL 3332769 at * 7

(Bankr. N.D. Ill. Nov. 8, 2007) (stating "[Creditor] bears the burden of establishing, by a preponderance of the

evidence, that compliance under § 543(b) should be waived pursuant to § 543(d)" (citing cases)); Lizeric, 188

B.R. at 506; In re Donato, 170 B.R. 247, 257 (Bankr. D.N.J. 1994); Matter of Willows of Coventry Ltd.

P'ship, 154 B.R. 959, 967 (Bankr. N.D. Ind. 1993); In re Northgate Terrace Apartments, Ltd., 117 B.R. 328,

332 (Bankr. S.D.Ohio 1990).

Accordingly, based upon the memoranda of law of the parties, and the further research conducted by

the Court since the hearings in this matter, the Court concludes that Capmark has the burden of proof under §

543(d) and it will examine the evidence from that perspective[8].

---

[8]  At the November 18, 2008 hearing, the Court opened the proceedings with the statement that the Debtor had the burden of proof
and required the Debtor to present its witnesses first (doc. # 46, p.13).  However, the parties presented their proof in tandem, with
the Creditor putting on evidence during the cross-examination of witnesses called by the Debtor.  Thus, the Court does not believe
that either party was disadvantaged by this initial statement of the Court or present modification of its preliminary determination
regarding the burden of proof.

3.  The Creditor Has Failed to Carry Its Burden of Proof

As noted in the prior § 543 order entered in this case (doc. # 25), this Court finds that when determining questions under § 543(d)(1), the factors articulated in Dill are sound, and shall apply them here. The Dill court described those factors as follows:

> A Court considering whether to exercise its discretion under section 543(d) may consider several factors indicative of whether the interests of creditors would be better served. These factors have evolved to include: (1) whether there will be sufficient income to fund a successful reorganization; (2) whether the debtor will use the turnover property for the benefit of the creditors; (3) whether there has been mismanagement by the debtor; (4) whether or not there are avoidance issues raised with respect to property retained by a receiver, because a receiver does not possess avoiding powers for the benefit of the estate; and (5)the fact that the bankruptcy automatic stay has deactivated the state court receivership action. . . . The interests of the debtor, however, are not part of the criteria considered when applying section 543(d)(1).

Dill, 163 B.R. at 225 (citations omitted).

Analysis of the first factor is limited by the fact that the Debtor has not yet proposed a plan of reorganization and has indicated that it may be seeking some modification or cram down of the Capmark claim. Moreover, neither party introduced evidence specifically showing that either the Debtor or the Receiver could operate the business in a way that would generate "sufficient income to fund a successful reorganization." Hence, the Court finds that the evidence presented does not weigh in favor of either party on this point, and that the Creditor has failed to persuade the Court that that it should waive the turnover requirement based upon this factor.

As regards the second factor, the Court has before it the following pertinent proof: copies of operating reports prepared by the Receiver, for many (though not all) of the months that the Receiver has been in place, showing the income and expenses of the Debtor's business since his appointment (Creditor's Hearing Exh ## 8, 9, 10, 11, 12, 13, 14, 16, 17 N, O and Exh 2 to doc. # 40); testimony with respect to the Debtor's conduct of the business prior to the appointment of the Receiver; testimony from the Receiver regarding his conduct of the business since his appointment; and the Debtor's proposed budget (Exh P).  The Court found the Debtor's principal, Randy Rouleau, and the Receiver, John Wilking, to be credible and their answers to questions posed by both counsel to be thoughtful and candid. From the record to date, it appears that the Receiver has done a fine job of managing the business, both operationally and financially. However, the question is whether the Debtor would do as well, if possession and control were returned to the Debtor. To make this determination, the Court focuses on the Debtor principal's testimony regarding what creditors he paid, and failed to pay, prior to appointment of the Receiver (a time period referred to hereafter as "pre-Receiver") and what basis there is to believe that he would operate the business differently in the future if the Receiver were required to turn over possession and control to him. Mr. Rouleau readily admitted that he had defaulted on the

10

Debtor's payment obligations to Capmark pre-Receiver and had paid certain insider vendors in lieu of paying Capmark (e.g., doc. # 46, pp. 63-66). He went on to testify that he understands that to regain and retain possession and control of his business, and for his business to be allowed the opportunity to reorganize under chapter 11, he must comply with the directives of the Bankruptcy Code and U.S. Trustee, must operate the business cost effectively (i.e., hiring vendors who offer the best value rather than insiders who charge higher prices), must make the monthly payments due to Capmark, and must pay taxes and insurance when due, going forward.  Mr. Rouleau presented a proposed budget to demonstrate that under his direction, the Debtor would be able to generate sufficient income to pay Capmark its monthly payments (e.g., id. at 42, line 13), maintain the collateral, and stay current on all required expenses.

Although Capmark had ample opportunity to do so, it did not rebut or disprove the validity of any of the expense or income figures the Debtor included on its projections. Counsel for Capmark inquired about why the insurance (id. at 38-39, 70-88) and tax figures (id. at 63) on the Debtor's projected income were lower than the Receiver's figures and Mr. Rouleau explained that those costs had gone down. He gave testimony on reappraisals of town property rolls and an aggressive insurance agent, and pointed to the Receiver's records to support this. On the income side, Mr. Rouleau proposed to raise rents to increase the business cashflow (e.g., id. at 39), and although Mr. Wilking testified that he was not persuaded that a rent increase was a good idea in all five of the parks, he agreed that a rent increase might be warranted in some of them, and conveyed the impression that this is a business judgment question on which reasonable minds might differ (e.g., id. at 98 - 100). Accordingly, the Court does not find the Debtor's projections in any of these categories specifically raised and contested by Capmark to be without basis or unreasonable.  Based upon this record, the Court finds that the Debtor would use the property for the benefit of creditors; and since Mr. Rouleau testified that he would make the monthly payments to Capmark going forward, and Exhibit P supports the Debtor's ability to do so, the Court finds that the Debtor would use the property for the benefit of creditor Capmark in particular.[9] Thus, the Court finds that the Creditor has not met its burden of proof on the second factor.

The only other testimony presented was from Tom Floyd, a Senior Asset Manager and Vice President of Capmark.  The Court did not find this testimony to be helpful; it was not very specific, and on several occasions it was argumentative and even snide. Most of the facts to which Mr. Floyd testified – that the Debtor had defaulted on its payment obligation, how the loan was structured, and the fact that there had been extensive litigation underlying the appointment of the Receiver – were facts to which the Debtor was willing to (and ultimately did) stipulate. Thus, this testimony did not assist Capmark in meeting its burden on this issue – or on any of the other Dill factors.

---

[9] The record indicates that the Receiver has not made a monthly payment to Capmark each month that he was in possession of the

11

The final factor to be considered is whether there has been mismanagement by the Debtor. This is a difficult assessment to make because the majority of debtors who file chapter 11 probably do so because they are struggling to meet expenses and/or suffering from lack effective management. Capmark's questioning of the witnesses, and the arguments set forth at the hearing and in its papers, suggest that the proof of the Debtor's mismanagement is the Debtor's mortgage payment default and failure to timely pay certain property maintenance expenses. If every debtor in default was deemed to have mismanaged its business for purposes of § 543(d)(1), it would be virtually impossible for any debtor to regain control of its property and to enjoy the presumption that chapter 11 debtors should operate as debtors in possession. Clearly, the standard must be attainable if debtors are to be accorded an opportunity to reorganize.  In that regard, this Court agrees with the rationale of the Nebraska bankruptcy court:

> It is not the debtors' burden to prove at a hearing on a motion for turnover that a plan can be confirmed.  If that were the burden, it is unlikely that many chapter 11 debtors would obtain turnover orders under Section 543.  This Court believes that the Section 543 turnover requirements are not as detailed or as onerous as the requirements the debtor must comply with in order to obtain confirmation of a plan of reorganization.

Kramer, 96 B.R. at 977.  While the Court agrees that the Creditor has shown poor management by the Debtor, it has not met its burden of showing that the Debtor mismanaged its property pre-petition.[10]

The last two factors, avoidance actions and deactivation of the state court action, have not been raised by either party. Accordingly, the Court considers those two factors to be neutral in its weighing of the evidence, and cannot find that the Creditor sustained any burden of proof with respect to them.

In sum, the Creditor has carried its burden of proof only with regard to one of the five factors, and that is not sufficient to warrant excusing the Receiver from the turnover requirements of § 543. Accordingly, the Court exercises its discretion to deny the motion for turnover under § 543(d).

Nothing in this Order prohibits Capmark from pursuing other remedies authorized by the Bankruptcy Code in the event the Debtor does not perform all of its statutory duties or fails to comply with U.S. Trustee requirements or fails to make payments pursuant to the terms of the Capmark note.

## MOTION FOR USE OF CASH COLLATERAL

In its September 30, 2008 Order (doc. # 25), the Court denied the Debtor's Emergency Motion for Use of Cash Collateral (doc. # 23), without prejudice, because the Debtor was not in control of the operation of its business assets. Based upon the determination made in this memorandum of  decision, a hearing on that matter will be held as soon as practicable.

---

property.
[10] Cases finding mismanagement implicate facts qualitatively different from those found here. For example, in In re WPAS, Inc., 6 BR 40 (Bankr. M.D. Fla. 1980), the Debtor evinced total disregard for the requirements of the Internal Revenue Code, exhibited a cavalier manner in handling his financial affairs, such as not filing payroll tax returns, not paying FICA taxes, and drawing checks on accounts without ascertaining whether there were sufficient funds in the account. Id. at 44.

## CONCLUSION

For the reasons set forth above, the Court determines that it has no authority to continue the state court receiver under § 543(d)(1). However, even if the Court had the authority to extend the Receiver's term, it would not do so because the Creditor – who has the burden of proof to show that compliance with § 543(b) should be waived pursuant to § 543(d) – has failed to carry that burden. Thus, the Creditor's motion is denied and the Receiver must turn over possession and control of the Debtor's property. An Order will be entered establishing the schedule for turnover, consideration of the Receiver's application for compensation, and a hearing on the Debtor's application for use of cash collateral.

This constitutes the Court's findings of fact and conclusions of law.

November 21, 2008                                         Hon. Colleen A. Brown
Rutland, Vermont                                          United States Bankruptcy Judge