Formatted for Electronic Distribution                                                                  Not for Publication

UNITED STATES BANKRUPTCY COURT
DISTRICT OF VERMONT

Filed & Entered
On Docket
January 28, 2009

_____

In re:
    R&G Properties, Inc.,                                           Chapter 11 case
          Debtor.                                                     # 08-10876

_____

### ORDER
### GRANTING, IN PART, THE DEBTOR'S MOTION TO EXTEND EXCLUSIVITY PERIOD

On January 12, 2009, the Debtor filed a motion to extend the exclusivity period for filing a chapter 11 plan and disclosure statement, pursuant to § 1121(d), for an additional ninety days (doc. # 70). The Debtor's sole significant creditor, Capmark Finance, Inc. ("Capmark"), filed an Opposition to the Debtor's motion, asserting that the burden of proving cause for an extension of the exclusivity period is on the Debtor and that the Debtor had failed to meet that burden (doc. #73).

After due consideration of the record in this case, the memoranda of law filed by the parties, the consent of the Office of the United States Trustee, the statute and case law pertinent to the issue, and oral argument presented by the Debtor and Capmark at a January 27, 2009 hearing, the Court finds that the Debtor has demonstrated cause for a sixty (60) day extension of the exclusivity period, pursuant to § 1121(d).

The Debtor bears the burden of establishing that cause for an extension of the exclusivity period exists. In re R.G. Pharmacy, Inc., 374 B.R. 484 (Bankr. D.Conn. 2007) (page numbers in opinion unavailable; citations omitted). In determining whether cause exists, bankruptcy courts have consistently pointed out that the question of whether to extend the exclusivity period rests within the sound discretion of the court. In re Adelphia Communications Corp., 352 B.R. 578, 586 (Bankr, S.D.N.Y. 2006). Case law has identified a number of factors that "normally are considered when determining whether 'cause' exists to reduce or increase the Debtor's exclusivity period." Id. at 586-87. These factors are:

(1)    The size and complexity of the case;

(2)    The necessity for sufficient time to permit the debtor to negotiate a plan of reorganization and prepare adequate information;

(3)    The existence of good faith progress toward reorganization;

(4)    The fact that the debtor is paying its bills as they become due;

(5)    Whether the debtor has demonstrated reasonable prospects for filing a viable plan;

(6)    Whether the debtor has made progress in negotiations with its creditors;

(7)  The amount of time which has elapsed in the case;

(8)  Whether the debtor is seeking an extension of exclusivity in order to pressure creditors to submit to the debtor's reorganization demands; and

(9)  Whether an unresolved contingency exists.

Id. at 587. Not all of the Adelphia factors "are relevant in every case. . . . It is within the discretion of the bankruptcy court to decide which factors are relevant and give appropriate weight to each." In re Hoffinger Industries, Inc., 292 B.R. 639, 644 (8th Cir BAP 2003). Applying these factors, the Court finds cause to grant the Debtor a sixty day extension of its exclusivity periods.

First, while this is a small chapter 11 case, it has raised unique questions of state law from day one, and has spawned an unusually large amount of litigation. Capmark argues that litigation alone is not enough for a finding of cause, and that is correct. But, it is a relevant factor in this case. In addition to the litigation in this court over at least four issues (whether to direct the receiver to turn over assets at the inception of the case, whether the state court order imposed a two year limit on the receiver's term that this court could not alter, whether the Debtor could show it would be in the best interest of all parties for it to be returned to possession of its assets, as well as whether the creditor could demonstrate grounds for a stay pending appeal), there is an appeal pending in the District Court. This litigation has required a substantial amount of time, attention and work from the Debtor's attorney, who is in a small law firm. While the pendency of an appeal, in and of itself, is not sufficient for a finding of cause under § 1121(d), in conjunction with other factors it may well support an extension of the exclusivity period. See In re United Press International, 60 B.R. 265, 270 (Bankr. D. Colo. 1986). The Court finds that the amount, contentiousness, and nature of the litigation in this case, compressed as it was into a very short time, makes this first factor relevant and causes it to weigh in favor of an extension of time. See In re Perkins, 71 B.R. 294, 297 (W.D.Tenn. 1987).

Second, the Debtor's position is that it needs the expanded exclusivity period in order to complete and review appraisals of its assets, and to provide that information to potential exit financing lenders. Although Capmark correctly observes that the Debtor should have commenced appraisals more promptly after the case was filed, it is clear to the Court that these steps are essential to the Debtor's ability to move forward toward reorganization. Thus, the Court finds that the Debtor has demonstrated how this factor presents cause for an extension, and in particular, has shown that an expansion of the exclusivity period is necessary in order for the Debtor to have sufficient time to formulate and negotiate a plan of reorganization and prepare adequate information. Thus, this factor weighs in favor or granting a § 1121(d) extension.

2

There is not a sufficient factual record before the Court for it to make a global finding with respect to the third factor of whether there is "good faith progress toward reorganization." However, taking into account the fact that the Debtor has retained an appraiser, that the Debtor is in the process of completing this critical step in the reorganization process, and that the case has been pending for only four months, the Court finds no absence of good faith weighing against the extension. Hence, application of this third factor is neutral.

Likewise, the fourth factor, focused on whether the debtor is paying its debts as they become due, does not tip the scale in either direction. The record in this case, especially the operating reports that the Receiver has been filing (see doc. # 75, for the month of December 2008 being the most recent report), show that the Debtor's operating expenses are being paid as they become due. Capmark is correct that the Receiver is not paying Capmark monthly payments on the mortgage obligation. However, the decision of whether to make those payments lies within the sole discretion and business judgment of the Receiver. Based upon the Receiver's testimony before this Court, neither party should be surprised by this fact as the Receiver made clear that he felt a fiduciary duty to reserve funds for crucial capital improvements that were needed in calendar year 2009. The Debtor's request for an extension of the exclusivity period is neither advanced nor diminished by conduct of this third party, over whom the Debtor has no control. Moreover, as a tangential consideration under this factor, the Court finds that the presence of the Receiver is likely to neutralize any risk of financial deterioration to creditors: the Receiver has demonstrated a sound track record in effectively maintaining the assets and operating the business. The facts here are a markedly distinguishable from those presented in the cases Capmark cites. See In re Southwest Oil Co. of Jourdanton, Inc., 84 B.R. 448, 453 (Bankr. W.D. Tex. 1987) (court denied extension where debtor's financial position deteriorated during first 120 day period); In re Ravenna Industries, Inc., 20 B.R. 886, 890 (Bankr. N.D. Ohio 1982) (ninth extension of exclusivity period denied where debtor's cash position was deteriorating). Thus, the Court treats this factor as relevant, and in light of the presence of the Receiver, finds, for several reasons, that this factor supports an extension.

The fifth factor, whether the Debtor has demonstrated a reasonable prospect for reorganization, weighs slightly in favor of granting an extension. This one is a close call. The evidence the Debtor presented at the hearing held on November 21, 2008 convinces this Court that it has a reasonable prospect of reorganization. However, it is evident from the hearings and filed papers in this case, as well as from the tone, length, and ferocity of the litigation between these parties, that a consensual plan is not at all likely. The Debtor has been unequivocal about its intention to propose a plan that will cramdown Capmark's claim and Capmark has been equally candid about its intent to fight zealously any attempt by the Debtor to regain possession of its assets. As the sole significant creditor in the case, Capmark will have a substantial role in the Debtor's chapter 11 reorganization efforts. Though it is always difficult to prognosticate whether a chapter 11 reorganization will

3

succeed, it is especially difficult here where it is, in effect, a single creditor case; the Debtor does not have possession and control of its assets during the plan formulation stage of the case; and the Debtor and its sole significant creditor have a longstanding contentious relationship. However, analysis of this factor does not require – nor could the Court make – a firm prediction of the outcome of this case. Rather, the question is whether under the facts and circumstances presented to date the Debtor has a *reasonable* prospect of reorganization. Hoffinger Industries, 292 B.R. at 643. Based upon the testimony of the Debtor's principal delineating why, how, and where he projects an increase in operating revenues, identifying how, why, and where he would reduce the parks' operating expenses, and expressing his belief that his attorney has a sound basis for seeking a cramdown of Capmark's secured claim through chapter 11, the Court finds there is a *reasonable* prospect for reorganization here. Hence, this factor supports a finding of cause for an extension.

The Debtor has not demonstrated any progress in its negotiations with its creditors. Thus, the impact of the sixth factor tips the scale against granting the extension.

Assessment of the seventh factor includes consideration of how long the chapter 11 case has been pending and how many extensions of the exclusivity period the Debtor has had. This chapter 11 debtor has been under the protection of Title 11 for approximately four months and is now seeking its first extension of the exclusivity period. These circumstances weigh in favor of an extension.

In examining the eighth Adelphia factor, the Court begins with the observation that it has nothing before it that suggests the Debtor is seeking an extension in order to pressure creditors to submit to the Debtor's reorganization demands. See In re Lake in the Woods, 10 B.R. 338, 345-46 (E.D. Mich 1981). On the contrary, upon Capmark's motion in state court, the Receiver was appointed and has remained in possession of all of the Debtor's assets throughout the chapter 11 case, and therefore the longer the period before confirmation the longer the time the creditor's agent is in possession of the Debtor's assets. This Court has ruled that the Receiver should turn over the assets to the Debtor under § 543(d), but Capmark is appealing that decision and the District Court stayed enforcement of that decision pending the outcome of the appeal. Capmark's argument with respect to this factor is unpersuasive; it says "Capmark submits that the Debtor's reference to its recent request for mediation reflects that the Debtor seeks to extend exclusivity in order to pressure creditors to submit to the Debtor's reorganization demands, once the Debtor makes a demand, which has yet to occur (factor 8)" (doc. # 73, p. 6) Encouraging creditors to mediate differences and negotiate the terms of the plan is a salutary effort that is wholly consistent with how chapter 11 should work; it does not constitute what this Court finds to be an effort "to pressure creditors to submit to the debtor's reorganization demands." Notwithstanding the benefit of encouraging discussion and negotiation among parties to a chapter 11 case, the Court declines to expand the exclusivity period to accomplish that goal. Rather, the Court is denying the last thirty days of the extension requested, specifically because that is the period the Debtor

4

seemed to be allocating to negotiation and mediation with Capmark.[1] In sum, the Court finds application of the fifth factor tips the balance in favor of granting the extension, albeit a shorter one than the Debtor requested.

The final factor calls upon the Court to determine if the Debtor has demonstrated that an resolved contingency exists that warrants – or would be addressed through – an expansion of the exclusivity period. The Debtor has made no such argument and the Court finds the Debtor has not proven this factor to have any probative value in the analysis. Hence, this factor tips the scale against granting the Debtor's motion.

The Court finds the third and fourth factors to be of little probative value in its analysis; but accords the remaining factors roughly equivalent significance. While the sixth and ninth factors weigh in favor of denying the extension, all of the other factors (first, second, fifth, seventh and eighth) weigh in favor of granting the extension. When added together, they constitute cause for an extension of sixty days.

However, because the question of "cause" to extend the exclusivity period is fact-specific, R.G. Pharmacy, 374 B.R. at 487, and because the nine Adelphia factors serve only as a guide but not as a required standard for courts to employ when making a determination, the Court also takes into account two other factors it considers pertinent to the issue. First, it assesses carefully the position of the key parties in interest. There are two, and they take opposite positions. Capmark is the only creditor in this case other than insiders and certain professionals who rendered pre-petition services to the Debtor, and thus its objection carries substantial weight. Its vehement opposition to the Debtor's request has persuaded the Court to limit the extension to sixty days – the very minimum amount of time that appears sufficient for the Debtor to complete the preliminary tasks that are the prerequisite to the composition and filing of a disclosure statement and plan, namely appraisal of the Debtor's assets and completion of the documentation required for exit financing (which requires the appraiser's conclusions). The other key party in interest is the Office of the United States Trustee, as it is objective in its analysis of the Debtor's operations and efforts in the reorganization case, experienced in evaluating reorganization cases and, through the § 341 meetings, is presumed to be familiar with this particular Debtor's operations and prospects for successful reorganization. The U.S. Trustee has consented to the Debtor's motion to extend the exclusivity period by ninety days. The Court considers this input to support the Debtor's arguments that it genuinely needs the additional breathing space it would obtain through an expansion of its exclusivity period to propose a viable plan.

The Court also weighs the bankruptcy policy issue highlighted by Capmark, namely the need to ensure

---

[1] At the January 27th hearing, in response to a question by the Court, the Debtor's attorney explained that the Debtor had requested a ninety day extension anticipating that it would engage in mediation with Capmark regarding the terms of the plan. In terms of specific timetables, she specified only that the appraisals were due this week, that she projected it would take approximately 30 to 45 days to finalize exit financing, and she would need a short time thereafter to insert the appraisal information in the disclosure statement and plan. The Court interprets this to mean that getting the appraisals, completing the exit financing work and preparing the plan will take about 60 days, and that the remaining 30 days is what the Debtor added on to encompass the opportunity to engage in mediation with Capmark.

5

that creditors will have a say in the reorganization of the Debtor and to ensure that the granting of an extension of the exclusivity period will not result in the reinstitution of "the imbalance between a debtor and its creditors that characterized proceedings" prior to enactment of the current version of § 1121. See In re Timbers of Inwood Forest Associates, Ltd., 808 F.2d 363, 372 (5th Cir 1987) (en banc). The relationship of these parties must be taken into account in discerning whether the granting of an extension would in fact trigger such an imbalance. These parties have been litigating the validity, amount and extent of Capmark's debt and security interest, as well as the Debtor's right to operate its mobile home parks, for over two years in state court. Hence, it is this Court's determination that the postponement of the creditor's opportunity to file a plan in this case for sixty days is a *de minimis* delay and does not prohibit Capmark from having a powerful voice in the process. Especially in a case such as this where the Creditor has had substantial control over the Debtor's collateral through the appointment of the Receiver, the Court does not find that a short extension of time would in any way approximate the imbalance between a debtor and its creditors in the reorganization process, such as existed prior to enactment of the current version of the exclusivity period limitations in the Bankruptcy Code.

For all of these reasons, the Court finds cause to grant the Debtor's motion in part, and hereby extends the exclusivity periods by sixty days.

SO ORDERED.

January 28, 2009  
Rutland, Vermont

_____  
Colleen A. Brown  
United States Bankruptcy Judge

6