*Formatted for Electronic Distribution* *Not for Publication*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF VERMONT**

_____

**In re:**
    **R & G Properties, Inc.,**
          **Debtor.**

Filed & Entered
On Docket
April 16, 2009

**Chapter 11 Case**
**# 08-10876**

_____

| | | |
|---|---|---|
| *Appearances:* | Michelle Kainen, Esq. | Heather Z. Cooper, Esq. |
| | Kainen Law Offices, P.C. | Rodney E. McPhee, Esq. |
| | White River Jct., VT | Kenlan, Schwiebert, Facey & Goss, P.C. |
| | *For the Debtor* | Rutland, VT |
| | | *For the Creditor* |

**MEMORANDUM OF DECISION**
**DENYING CREDITOR'S MOTION TO DISMISS, AND**
**ALTERNATIVELY, FOR RELIEF FROM STAY**

      On March 5, 2009, Creditor Capmark Finance Inc. ("Creditor" or "Capmark") filed a motion to dismiss this chapter 11 case, pursuant to 11 U.S.C. § 1112(b)[1], or alternatively, for relief from stay pursuant to § 362(d) (doc. # 111), with accompanying exhibits (doc. ## 112-121) (the "Motion"). On March 16, 2009, R & G Properties, Inc. ("Debtor" or "R&G") filed its chapter 11 Plan of Reorganization (doc. # 131) and its Disclosure Statement (doc. # 132). Subsequently, on March 26, 2009, the Debtor filed an Objection to the Creditor's Motion (doc. # 138), after which the Creditor filed a Supplemental Memorandum of Law (doc. # 139). On March 31, 2009, the Court held a hearing on the Motion, heard argument and testimony, and reserved decision. For the reasons that follow, the Court denies the Creditor's Motion.

      The Creditor's main argument for dismissal is that § 1112(b) permits a bankruptcy court to dismiss a chapter 11 case for "cause"; bad faith constitutes "cause"; and applying the factors that courts have found to demonstrate bad faith, there are grounds for dismissal of this case (doc. # 111). The Debtor contends that bad faith is not listed as one of the criteria for cause under § 1112(b); even if bad faith were found to be relevant, the Creditor has the burden to establish that cause exists; and the Creditor did not do so (doc. # 138). At the commencement of the hearing, the parties stipulated that the Creditor was undersecured and that the Debtor has not made any adequate protection payments to the Creditor since the Debtor filed this chapter 11 case.

---

[1] Unless otherwise indicated, all statutory citations refer to Title 11 of the United States Code (the "Bankruptcy Code").

## DISCUSSION

**I.    Analysis of the Grounds for Dismissal Under § 1112(b)**

    A.    The Standard

Section 1112(b) provides an "illustrative, not exhaustive" list of ten factors to dismiss a bankruptcy case for "cause." C-TC 9th Ave. P'ship v. Norton Co. (In re C-TC 9th Ave. P'ship), 113 F.3d 1304, 1311 (2d Cir. 1997). It is settled in this circuit that "[c]ause for dismissal may be found based on unenumerated factors, including 'bad faith.'" In re Century/ML Cable Venture, 294 B.R. 9, 34 (Bankr. S.D.N.Y. 2003) (citing C-TC, 113 F.3d at 1310). "Determinations whether to dismiss. . . are within the discretion of the Court." Id. Accord First Connecticut Consulting Group, Inc. v. Mocco (In re First Connecticut Consulting Group, Inc.), 340 B.R. 210, 222 (D.Vt. 2006), aff'd 254 Fed. Appx. 64 (2d Cir. Nov. 15, 2007); see also In re RCM Global Long Term Capital Appreciation Fund, Ltd., 200 B.R. 514, 519 (Bankr. S.D.N.Y. 1996) (observing that a bankruptcy judge has wide discretion to determine if cause exists). Further, "the burden is on the movant to prove bad faith, and dismissal for bad faith is to be used sparingly to avoid denying bankruptcy relief to statutorily eligible debtors except in extraordinary circumstances." Century/ML Cable Venture, 294 B.R. at 34 (citing cases).

C-TC was the Second Circuit's last major pronouncement on the factors a court may find to be pertinent indicators when considering whether a chapter 11 case has been filed in bad faith. Those factors are:

    (1)    the debtor has only one asset;

    (2)    the debtor has few unsecured creditors whose claims are small in relation to those of the secured creditors;

    (3)    the debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debt;

    (4)    the debtor's financial condition is, in essence, a two party dispute between the debtor and secured creditors which can be resolved in the pending state foreclosure action;

    (5)    the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights;

    (6)    the debtor has little or no cash flow;

    (7)    the debtor can't meet current expenses including the payment of personal property and real estate taxes; and

    (8)    the debtor has no employees.

C-TC, 113 F.3d at 1311. This list overlaps with, although it is not identical to, the list cited by both parties from In re HBA East, Inc., 87 B.R. 248, 259 (Bankr. E.D.N.Y. 1988).

The majority of the C-TC factors are "objective," in that they can be gauged by objective facts (e.g., number of assets, amount of cash flow). However, the fifth factor touches on subjective issues – the debtor's "intent." Prior to C-TC, the bankruptcy court in HBA East wrote that the dismissal standard was

an objective one, "rather than a question of the subjective intention of the petitioners." HBA East, 87 B.R. at 261-62. The court acknowledged that, while good faith determinations were "subject to judicial discretion under the circumstances of each case," it would not reject those cases that had assessed subjective factors; it emphasized that courts should not "give undue reliance [to] the subjective intent of Chapter 11 petitioners." Id. at 262. Following the Second Circuit's lead in C-TC, this Court will consider both objective and subjective factors in determining whether the Debtor's petition was filed in bad faith.

In evaluating the C-TC factors, the Court will not "engage in a mechanical counting exercise" to determine whether the Debtor filed in bad faith. Century/ML Cable Venture, 294 B.R. at 36. Furthermore, the Court does not consider these factors in a vacuum, but rather in the context of the totality of the circumstances. In re FMO Assocs. II, LLC, __ B.R. __, 2009 WL 367540 * 1 (Bankr. E.D.N.Y. Feb. 13, 2009). Accord Baker v. Latham Sparrowbush Assocs. (In re Cohoes Industrial Terminal, Inc.), 931 F.2d 222, 227 (2d Cir. 1991) (the court must consider totality of circumstances to determine if there is substantial evidence to indicate that the debtor made a bad faith filing). A § 1112(b) motion to dismiss requires a showing of cause by a preponderance of the evidence. In re St. Stephen's 350 East 116th St., 313 B.R. 161, 170 (Bankr. S.D.N.Y. 2004).

    B.    Application

In arguing the applicability of factors 4 and 5 in support of dismissal, the Creditor contends that the Debtor's chapter 11 filing is essentially a two-party dispute based on state law and that the bankruptcy case was filed as a litigation tactic to stall and impede the enforcement of the Creditor's legal rights against the Debtor (its effort to foreclose against the Debtor's assets). Capmark emphasizes that the bankruptcy petition was filed two days after a state court decision determining the amount due the Creditor and putting the Creditor in a position to complete the foreclosure action (doc. # 111, pp. 3, 7-9).

Capmark is correct that the record in this case indicates that (1) the litigation that has ensued in Bankruptcy Court has involved only the Debtor and Creditor; (2) the Debtor has a single asset (five trailer parks subject to the Creditor's security interest) which was the subject of a foreclosure action as a result of the Debtor's pre-petition default; (3) the bankruptcy petition was filed following a state court decision in the foreclosure proceeding that was adverse to the Debtor; and (4) the bankruptcy petition stayed that foreclosure action. The Creditor, in citing these facts, has not proven by a preponderance of the evidence that the Debtor filed its chapter 11 case as a litigation tactic for the purpose of stalling the Creditor's state court rights, or to open the door for expanded legal sparring of state court issues in bankruptcy court. Its bad faith arguments are quite conclusory and, in the judgment of the Court, manifest its understandable "frustration" with the Debtor's bankruptcy filing rather than a showing of the Debtor's "abuse of judicial purpose." Cohoes, 931 F.2d at 228. Simply checking off these factors on the list does not prove bad faith. As the court opined in In re Walden Ridge Dev., LLC, 292 B.R. 58 (Bankr. D.N.J. 2003), "Chapter 11 filings arising out of a two-party dispute or triggered by state court proceedings do not per se constitute

3

bad faith filings." Id. at 62. The Second Circuit, in Cohoes, examined the connection between actions that impede litigation and bad faith and reached a similar conclusion:

> Indeed, because a major purpose behind our bankruptcy laws is to afford a debtor some breathing room from creditors, it is almost inevitable that creditors will, in some sense, be 'frustrated' when the debtor files a bankruptcy petition. In reality, there is a considerable gap between delaying creditors, even secured creditors, on the eve of foreclosure and the concept of abuse of judicial purpose.

931 F.2d. at 228 (citations and internal quotations omitted). See Fields Station LLC v. Capitol Food Corp. (In re Capitol Food Corp.), 490 F.3d 21, 25-26 (1st Cir. 2007) ("Congress intended that the filing of a chapter 11 petition and the coincident triggering of the automatic stay would afford debtors a 'breathing spell' from 'all collection efforts, all harassment, and all foreclosure actions.'") (emphasis added). See also Matter of Levinsky, 23 B.R. 210, 221 (Bankr. E.D.N.Y. 1982) (noting that imposition of the automatic stay as a derivative benefit of a reorganization proceeding is not justification for dismissal due to bad faith). Case law details that, in some circumstances, filing for bankruptcy protection is a "litigation tactic," and suffices for proof of bad faith by a debtor. See, e.g., In re Bridge to Life, Inc., 330 B.R. 351, 356-57 (Bankr. E.D.N.Y. 2005) (finding that debtor filed chapter 11 as a litigation tactic to avoid the posting of a supersedeas bond in state court). But the Creditor's argument that the timing of the filing supports an "inference" that the filing was a litigation tactic (doc. # 139, p. 3) is but a small piece of the Court's totality of the circumstances analysis. Similarly, the Creditor concludes that because the Debtor listed its debt as "disputed" in its Schedules, the Debtor intended to "question Capmark's authority or standing to enforce the Loan Documents and foreclose" (doc. # 139 p. 4). The Debtor's counsel made clear at the March 31, 2009 hearing that she had listed the Creditor's claim as disputed because she was not sure if Capmark was the holder of the claim as of the petition date, and that neither the Plan nor the Disclosure Statement set forth any intent to litigate Capmark's claim. Moreover, she affirmatively stated, and Mr. Rouleau testified at that hearing, that the Debtor now has no dispute with either the amount of the Creditor's claim or Capmark's right to pursue it in this case.

 Chapter 11 offers distressed borrowers the opportunity to "resolve" financial difficulties through reorganization rather than liquidation, and frustrated creditors must keep in mind that a debtor's availing itself of that opportunity is not per se bad faith or the kind of "extraordinary circumstances" that justify a bad faith dismissal. See In re P.J. Clarke's Restaurant Corp., 265 B.R. 392, 401-02 (Bankr. S.D.N.Y. 2001) ("It is beyond dispute one of the key principles of Chapter 11 of the Bankruptcy Code, as well as its predecessor, is to provide a debtor with relief from creditor pressure and litigation during a period in which it can attempt to marshal its assets, negotiate with its creditors and formulate a reorganization plan."). Accordingly, the Court does not find that the Creditor sustained its burden on factors 4 and 5.

 As to whether factors 1 and 3 – a bankruptcy filing by a debtor with a heavily-encumbered single asset that was subject to a state court foreclosure action – justify dismissal, the Court finds the reasoning

4

in In re Cambridge Woodbridge Apartments, L.L.C., 292 B.R. 832 (Bankr. N.D. Ohio 2003) applicable. In that case, a debtor whose sole asset was a 180-unit apartment complex filed for protection under chapter 11 after a creditor initiated a state court foreclosure action, foreclosure arguments had been made (although not yet decided), and a receiver had been appointed. The creditor moved for dismissal or, in the alternative, relief from stay. Addressing whether the debtor had filed in bad faith, the court (discussing the bad faith aspect of § 362(d)) observed:

> [m]ost single asset real estate bankruptcies involve one asset, few unsecured creditors and a bankruptcy filing that occurs after an unsuccessful defense in a state court foreclosure proceeding. . . . [I]f debtors in single asset real estate cases were deemed to have filed in bad faith due to the very nature of their business, § 362(d)(3) would never have the opportunity to provide relief from the automatic stay to creditors with an interest in single asset real estate cases.

Id. at 838. In this case, the fact that the Debtor owns a single asset and filed for bankruptcy after an adverse decision in the state foreclosure action (satisfying factors 1 and 3) is not sufficient to constitute grounds for a finding of bad faith leading to dismissal of this case. See also In Barrington P'ship v. Barrett (In re Foundry of Barrington P'ship), 129 B.R 550, 555-56 (Bankr. N.D. Ill. 1991) (case where state court appointed receiver in foreclosure action to operate half-filled shopping center; debtor filed for bankruptcy protection; creditor moved for dismissal based on bad faith, arguing that debtor owned a fully encumbered single asset, had no employees and few non-insider unsecured creditors, and the case was filed in the midst of a foreclosure action; the court rejected these grounds as indicative of a bad faith filing, noted that the stay was a legitimate benefit allowing debtors time to reorganize and negotiate with creditors, including finding new tenants, which would have been impossible without the stay that prevented loss of the property through foreclosure).

With regard to factor 2 – the debtor having few unsecured creditors whose claims are small in relation to those of Capmark – the circumstances of this case diminish the probative value of this point. As the Debtor has pointed out, the fact that the Debtor has few unsecured creditors is a direct consequence of the Receiver's control of all of the Debtor's cash since his appointment in September 2006 and the reality that it was the Receiver, and not the Debtor, who determined which entities were paid. The Receiver opted to pay all operating expenses and not to make regular payments to either the secured creditor or holders of non-operating debts. Accordingly, on the date the petition was filed, the Debtor's only creditors were Capmark and a small number of creditors who were either related to the Debtor or professionals who rendered services to the Debtor in the state court litigation. Since the Debtor had no role in making pre-petition payments during the Receiver's tenure, this factor cannot be used to support a finding that the Debtor acted in bad faith.

In a similar vein, the weighing of factors 6 and 7 – which relate to the cash flow and payment of operating expenses, must take into account the Debtor's lack of control of its assets both pre- and post-

5

petition. It is significant in this bad faith inquiry that the Debtor's business (the trailer parks) continues to operate, with a monthly rental income of approximately $51,000 (doc. # 127). This income is adequate for the Debtor to meet its monthly operating expenses.[2] Because the Debtor has adequate cash flow to meet current expenses, these two factors weigh against a finding that the filing was in bad faith. See In re HBA East, Inc., 87 B.R. at 261 ("Reorganization presupposes the existence of monies to pay the expenses of operating a business and assets to generate the funds for implementation of a reorganization plan."). The parties have made no arguments concerning factor 8.

Taking into account the facts and circumstances in this case, the Court concludes that the Creditor has not met its burden in establishing a bad faith filing, warranting dismissal. Of the list of eight C-TC factors, there is no question that factors 1, 2, and 3 are present here (although factor 2 is not as straight-forward as it would otherwise appear). However, the Creditor has not proved that factors 4 or 5 apply, and factors 6 and 7, which this Court considers the most important factors in the analysis as applied to this particular case, weigh against finding a bad faith filing.

One of the HBA East bad faith factors, not listed in C-TC, is "whether there is a reasonable probability that a reorganization plan can be proposed and confirmed." HBA East, 87 B.R. at 259. Other courts have described this consideration as determining whether "the debtor actually has a potentially viable business in place to protect and rehabilitate. Lacking this, the chapter 11 case has lost its raison d'etre." RCM, 200 B.R. at 520. That court pointed out that "a court should reach the conclusion that there is no demonstrable ability to reorganize only upon the strongest evidentiary showing." Id. See Cohoes, 931 F.2d at 227 (whether a debtor filed frivolously – in bad faith – depends on whether, on the filing date, there was a "reasonable likelihood that the debtor intended to reorganize" and whether there was a "reasonable probability that it would eventually emerge from bankruptcy proceedings."); Fraternal Composite Servs., Inc. v. Karczewski, 315 B.R. 253, 257 (N.D.N.Y. 2004) (observing that courts have found bad faith filings when the debtor had no reason to reorganize or rehabilitate).

The Creditor vehemently disputes that the Debtor will be able to reorganize. It declares that even with a savvy Receiver operating the business and a positive cash flow, the business is not generating enough cash sufficient to fund regular operating expenses including the debt service to Capmark (doc. # 111, pp. 9-10). As a result, the Creditor concludes that there is "little to no possibility of a rehabilitation of the Debtor's business." Id. p. 9. The Court gives this argument little weight because it was Capmark that insisted that the state court appointed Receiver remain in place in this bankruptcy case, and it was the Receiver, rather than the Debtor, who solely determined how to allocate income from the operation of the

---

[2] The Court recognizes that the Receiver is not making adequate protection payments to Capmark; instead the Receiver has opted to fund a reserve for future capital improvements – which, by preserving the collateral, inures to the benefit of the secured creditor. That exercise of business judgment by the Receiver and lack of payments to Capmark will be addressed below.

6

trailer parks.[3] Turnover litigation ensued in this Court but the Receiver has remained in control of the Debtor's assets and continues to exercise his judgment as to how to manage the parks, what rent to charge and what bills are paid – including whether Capmark is paid on its secured debt. The Court will not find the Debtor to have acted in bad faith based upon the lack of payments to Capmark under these circumstances (especially since Mr. Rouleau testified at the March 31st hearing and his attorney stated on the record that if the Debtor were allowed to resume possession and control of its operations, it would make payments on its secured debt).

Moreover, the Creditor's position is undercut by the fact that it has taken no affirmative steps to compel the Receiver to service its secured debt (i.e., to make adequate protection payments in the relief from stay context). In response to a direct question by the Court, Capmark's counsel acknowledged at the March 31st hearing that although the Receiver is holding approximately $70,000 in funds, Capmark has made no application to compel the Receiver to make payments to Capmark. It pointed to the Court's January 28, 2009 Order (regarding extension of the Debtor's exclusivity period) (doc. # 77) as a rationale for its position. That Order stated:

> Capmark is correct that the Receiver is not paying Capmark monthly payments on the mortgage obligation. However, the decision of whether to make those payments lies within the sole discretion and business judgment of the Receiver. Based upon the Receiver's testimony before this Court, neither party should be surprised by this fact as the Receiver made clear that he felt a fiduciary duty to reserve funds for crucial capital improvements that were needed in calendar year 2009.

Id. While the Receiver, in his business judgment, determined that a reserve fund was necessary, that did not in any way foreclose the Creditor from moving for payments on its secured debt. The Creditor did not do so. As a result, Capmark cannot now be heard to complain that it is receiving no payments from a Receiver that it fought to keep in order to manage the parks, blame the Debtor for its lack of payments, and then reasonably expect that fact to weigh in favor of dismissal as evidence that the Debtor cannot show a reasonable likelihood of a successful reorganization.

In this case, the Debtor's business possesses indicia of a viable enterprise: it has current operations and cash flow, which tend to indicate that the filing was not "the last gasp of a dying enterprise." RCM, 200 B.R. at 521. In addition, the Debtor's reorganization plan proposes that the Debtor "will pay the [Creditor's] secured claim of $2,077,500.00[4] at an interest rate of 6% amortized over a period of 20 years,

---

[3] Once the Debtor filed for bankruptcy protection in September 2008, the Creditor filed an emergency motion for waiver of the § 543 turnover requirement, strenuously arguing that the state court appointed Receiver should remain in control of the Debtor's operations (doc. # 6). After a hearing, the Court issued an Order permitting the Receiver to stay in place for 60 days (doc. # 25). Shortly before the 60-day period expired, the Creditor moved to continue the Order waiving the turnover requirement (doc. # 31). Following that hearing, the Court issued a decision and order on November 21, 2008 denying the Creditor's motion to waive the turnover requirement and ordered the Receiver to turn over control of the business to the Debtor (doc. ## 49, 58). The Creditor immediately appealed and filed a motion for a stay pending appeal (doc. ## 51, 55), which the District Court granted (doc. # 61).

[4] Although there now appears to be no dispute as to the amount owed, in the motion to dismiss, the parties submitted different valuations for the trailer parks: the Creditor's number was $3,260,000, based on a March 2008 appraisal (doc. # 111), and the

7

with a balloon payment of $1,763,695.61 due on or before the sixtieth month following the Effective Date of the Plan" (doc. # 131, ¶ 4.2). The Debtor proposes monthly payments to Capmark in the amount of $14,880, id., and to use the ongoing operating revenues to fund those payments, id., ¶ 5.2. The Plan also envisions financing from another lender to satisfy the balloon payment on or before the 60th month following the Effective Date of the Plan. Id. At the March 31st hearing, Capmark's counsel pressed Mr. Rouleau as to whether that financing had been secured, in an effort to show that the chances for reorganization were small because one of the key elements of the reorganization plan – the financing – was not yet in place. Mr. Rouleau admitted that, as of that time, he did not have the financing. He explained that he had initiated the application process but that it would be difficult to obtain a financing commitment now for five years in the future. He testified that if and when the plan is confirmed, he would immediately take steps to obtain the financing. The Court finds that the Debtor's position is not unreasonable, particularly given the fact that confirmation of the Debtor's plan is not a foregone conclusion. Furthermore, at the November 18, 2008 hearing, Mr. Rouleau testified in detail about a budget he had constructed (illustrated by spreadsheet) that substantiated his conclusion that he could operate the trailer parks, make monthly interest and principal payments to Capmark in the amount set out in the Note (doc. # 46, p. 42), and also reserve funds necessary for future capital improvements (id. p. 40). Mr. Rouleau has also testified that he proposes to raise rents, that he believes the rent increase will generate additional income, and that with that income he will qualify for financing that will allow the Debtor to pay the Creditor its claim in full within 60 months.

      The Court briefly considers bad faith factor 5, as it focuses on the Debtor's intent. See C-TC, 113 F.3d at 1312 (assessing debtor's intent to delay and frustrate the creditor's legitimate efforts to enforce its rights); Cohoes, 931 F.2d at 228 (discussing whether the debtor had "a genuine intent to emerge from bankruptcy as a rejuvenated organization"); RCM, 200 B.R. at 522 ("The subjective bad faith standard is mean to insure that the Debtor actually intends to use chapter 11 to reorganize and rehabilitate itself and not simply to cause hardship or delay to its creditors by invoking the automatic stay."). The Creditor has presented no evidence on this issue (focusing solely on objective bad faith factors). The Debtor did present evidence. During the March 31, 2009 hearing, Mr. Rouleau credibly testified that his intent in filing chapter 11 was to reorganize, not to relitigate issues that had been resolved in state court.[5] The Debtor's counsel reiterated that point in her arguments at the hearing. The Court gives those statements credence, and finds they are corroborated by the Debtor having filed a reorganization plan and disclosure statement, and the fact that the Debtor has obtained appraisals of its properties – all of which appear to indicate an intent to reorganize and to zealously proceed toward confirmation.

---

Debtor submitted three values: $1,700,000 liquidation value; a $2,455,000 appraised value, based on a January 2009 appraisal; and a $2,077,500 "cramdown value" (doc. # 138). The Court made no findings on valuation at the hearing.

[5] In any event, law of the case and principles of res judicata present high hurdles that the Debtor would need to overcome if it sought to relitigate in this Court issues that were previously adjudicated in state court.

Timing and the opportunity to reorganize are also important considerations in the Court's totality of the circumstances analysis. At this stage of the proceeding, based upon the arguments presented in connection with the motion to dismiss, as well as the entire record in this case, and its assessment of the C-TC and other factors, the Court cannot find that the plan proposed by the Debtor has "no possibility" of confirmation or that the Debtor had no reason to reorganize or that the Debtor filed in bad faith. Dismissal at this time would be premature. The Debtor is entitled to an opportunity to present proof of the feasibility of its reorganization plan and to respond to the arguments in opposition to confirmation raised by any party in interest. There is no question that the Creditor, as well as the U.S. Trustee and the Court, will scrutinize the Debtor's plan very carefully. Thus, the Court deems it appropriate to allow the case to proceed to the next phase of the confirmation process to discern if in fact reorganization is possible.

## II. Alternative Relief Sought: Relief from Stay under § 362(d)

In the alternative, the Creditor argues that relief from the automatic stay is warranted, under §§ 362(d)(1) and (d)(2), to allow it to conclude the foreclosure proceeding in state court. Section 362(d)(1) provides for lifting of the automatic stay "for cause, including the lack of adequate protection of an interest in property of such party in interest." Section 361 describes three forms that adequate protection may take, including periodic cash payments, an additional or replacement lien, or such other relief resulting in the "indubitable equivalent" of the creditor's interest in the property. 11 U.S.C. § 361 (1)-(3). The movant bears the burden of "proving its prima facie entitlement to relief under § 362(d)(1). In re King, 305 B.R. 152, 174 (Bankr. S.D.N.Y. 2004). To the extent that the Creditor repeats its arguments that "cause" exists for lifting the automatic stay based on the Debtor's lack of good faith under § 362(d)(1), the Court rejects that argument for the same reasons it rejected the same bad faith argument above.[6] See In re Laguna Assocs. Ltd. P'ship, 30 F.3d 734, 738 (6th Cir. 1994) ("There is no substantive difference

---

[6] The Creditor contends that

> [n]o form of adequate protection, whether of the type referred to in § 361 or otherwise has been provided to Capmark. While the Receiver continues to operate the Five Mobile Home Parks, he utilizes Capmark's cash collateral, which is not protected from diminution or decrease in value. Because there are no protections in place to adequately preserve Capmark's interests, Capmark is not adequately protected and relief from stay is warranted and, in fact, mandated by § 362(d)(1).

(doc. # 111 p. 13). The Debtor responds that it has never opposed providing cash payments to the Creditor and, had there been a hearing on cash collateral, that issue would have been addressed; in any event, the lack of such payments is not the Debtor's fault because it has had no control over its assets since the case was filed (doc. # 138). As the Court has commented above, the Debtor has been in a "Catch-22" position concerning adequate protection payments on the secured debt. The Receiver decided whether, and how much, to pay Capmark during the two years prior to the Debtor's bankruptcy filing and during the pendency of this case. Once in bankruptcy court, Capmark argued for the Receiver to remain in place and, while losing the motion, was successful in garnering a stay which kept the status quo (and Receiver) in place. This is not a situation where the Debtor can be faulted for reneging on or refusing to pay adequate protection payments; rather, it is a situation of Capmark's making. Also as pointed out above, Capmark has not made any affirmative effort to require the Receiver to make adequate protection payments, making its arguments for relief from stay under § 362(d)(1) less than compelling. See In re Camellia Court Apartments, Ltd., 117 B.R. 316, 319 (Bankr. S.D. Ohio 1990) ("The Court finds that adequate protection is not an issue with regard to the [Creditor's] interest in the Rents. The [Creditor] successfully sought the appointment of a receiver and, thus, voluntarily consented to the Receiver's collection and use of the Rents. Therefore, the Debtor is not using the Rents. As long as the Receiver retains its control over the Rents, the [Creditor] cannot argue that the Debtor is required to offer adequate protection for the [Creditor's] interest in the Rents.").

between the cause requirement for dismissal of a petition under Section 1112(b) and the cause requirement for relief from an automatic stay under Section 362(d)(1)."); In re Balco Equities, Ltd., Inc., 312 B.R. 734, 748-49 (Bankr. S.D.N.Y. 2004) (same).

The Creditor has also sought relief from stay under § 362(d)(2), which provides that a court may, in its discretion, grant relief from stay of an act against property if "(A) the debtor does not have an equity in such property; and (B) such property is not necessary to an effective reorganization." This statute is worded in the conjunctive; both (A) and (B) have to be satisfied before relief from stay may be accorded under this subsection. The party opposing relief from stay has the burden of proof on all issues other than the debtor's equity in the property. 11 U.S.C. § 362(g). Once the movant shows that the debtor has no equity in the property, the burden shifts to the debtor to establish that the property is "necessary to an effective reorganization" and that there is "a reasonable possibility of a successful reorganization within a reasonable time." United Sav. Ass'n v. Timbers of Inwood Forest Assocs., Ltd., 484 U.S. 365, 376 (1988) (internal quotations and citation omitted). The debtor must show "not merely that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization that is in prospect." Id. (emphasis in original).

> The test is one of feasibility. The debtor need not show that the plan is confirmable, In re East-West Assocs., 106 B.R. 767, 774 (S.D.N.Y.1989), but that "the things which are to be done after confirmation can be done as a practical matter." In re Ritz-Carlton of D.C., Inc., 98 B.R. 170, 172 (S.D.N.Y.1989) (Walker, J.) (quoting In re Fenske, 96 B.R. 244 (Bankr.D.N.D.1988)). "A motion for relief from the stay should not be turned into a confirmation hearing; the debtor need only show that where there is lack of equity, the proposed plan has a realistic chance of being confirmed and is not patently unconfirmable." In re White Plains Dev. Corp., 140 B.R. 948, 950 (Bankr.S.D.N.Y.1992) (citation omitted).

In re 160 Bleecker Street Assocs., 156 B.R. 405, 410-11 (S.D.N.Y. 1993). As to feasibility, "the court should not be left to speculate about important elements and key issues relating to the likelihood of an effective reorganization.... The debtors' hopes and aspirations for reorganization, although well-intended, have not been supplemented by any showing that a reorganization is possible, let alone reasonably likely within a reasonable period of time." In re Diplomat Electronics Corp., 82 B.R. 688, 693 (Bankr. S.D.N.Y.1988).

The parties have stipulated that the Creditor is undersecured, thereby satisfying § 362(d)(2)(A). With regard to § 362(d)(2)(B), the Debtor's position is that it has "made strides toward reorganization and has proposed a plan" and therefore there is a "reasonable possibility of successful reorganization" (doc. # 138, p. 11). The Creditor asserted, in its papers filed before the Debtor submitted its reorganization plan, that because the Debtor had no credible reorganization plan in prospect, the property was not essential for an effective reorganization, and therefore the Debtor was not entitled to the protection of the automatic stay (doc. # 111, p. 14). In its Supplemental Memorandum, the Creditor critiqued the proposed reorganization plan that had since been filed, and based its assertion that no reorganization was in prospect on the

10

fact that the Debtor failed to specify the source or terms of its "white knight financing" and on the fact that the plan contained many potentially fatal infirmities (doc. # 139, pp. 10-11). As to the latter point, the Court will not address these alleged infirmities now; they are more appropriately interposed at the hearing concerning the adequacy of the disclosure statement or at the confirmation hearing. See Century/ML Cable Venture, 294 B.R. at 36 ("There is no requirement in the Bankruptcy Code that the [Debtor] prove it can confirm a plan in order to file a petition.").

The Court is not prepared to find, given the evidence, both testimonial and written, by the Debtor's principal at the November 2008 and March 2009 hearings referred to above, that the reorganization plan is simply a well-intended but unrealistic projection of the Debtor's future business prospects, or that reorganization is not reasonably likely within a reasonable period of time. It is not clear at this time whether the Debtor's reorganization efforts will succeed. What is clear is that the Debtor has met its burden of showing that it is possible for the reorganization to succeed within a reasonable time.

In assessing the possibility of an effective reorganization, the Court must weigh the risks and benefits to each party of allowing the Debtor an opportunity to demonstrate that reorganization is possible. The parties have been embroiled in ferocious litigation with each other since 2003. They are now within about sixty days of a confirmation hearing at which time there will be a clear indication of whether the Debtor can satisfy the legal prerequisites for proceeding as a reorganized debtor. The Court, in balancing whether to act now to grant relief from stay or allow the Debtor sixty days to demonstrate that an effective reorganization is possible, takes this history into consideration and balances the competing interests of the parties. Between now and the confirmation hearing, the Receiver will continue to manage and protect the Creditor's collateral. The Debtor has been complying with all of the requirements of chapter 11. Thus, there appears to be little risk to the Creditor of allowing the Debtor the benefit of the stay for two more months and the opportunity to demonstrate that it can reorganize, whereas lifting the stay now would impose great harm on the Debtor by depriving it of the opportunity to reorganize under chapter 11.

The Creditor's other argument in support of relief from stay depends upon application of the rationale and conclusions reached in In re Frye, 323 B.R. 396 (Bankr. D. Vt. 2005) to this case. However, this chapter 11 case can be distinguished from In re Frye on several grounds. Frye was a chapter 13 case where the individual debtor's performance in a prior (dismissed) chapter 13 case, her failure to consummate her obligations under a forbearance agreement with the creditor, her ongoing problems with that creditor, her failure to include payments to the creditor in the amended plan (other than a future refinancing that had many more moving parts than at issue here), and an absence of change in circumstances that would support a finding that the amended plan was feasible, all led the Court to conclude that the debtor could not successfully reorganize. Id. at 402. There is no such history of prior filings, prior failed workouts with the Creditor, or prior failed reorganization attempts here. Notably, there was no lack of the

debtor's control over her assets in Frye. Therefore, this argument fails.

The Court has considered all of Capmark's arguments in support of relief from stay and finds none of them to be compelling, or to warrant the stay relief sought.

In sum, Court finds that the Debtor has met its burden of showing that there is a reasonable possibility of a successful reorganization within a reasonable period of time. That is sufficient to defeat the Creditor's relief from stay motion pursuant to § 362(d)(2).

## **CONCLUSION**

Based on the reasoning articulated above, the Court finds the Creditor has failed to sustain its burden of proof for dismissal of this case under § 1112(b) and has failed to demonstrate a right to relief under § 362(d).

This constitutes the Court's findings of fact and conclusions of law.

Rutland, Vermont
April 16, 2009

Colleen A. Brown
United States Bankruptcy Judge