UNITED STATES BANKRUPTCY COURT
DISTRICT OF VERMONT

Filed & Entered
On Docket
July 6, 2009

_____

In re:

    **R & G Properties, Inc.,**                                                **Chapter 11 Case**
          Debtor.                                                                      **# 08-10876**

_____

| *Appearances:* | Michelle Kainen, Esq. | Heather Z. Cooper, Esq. | Kevin Purcell, Esq. |
|---|---|---|---|
| | Kainen Law Office, PC | Kenlan, Schwieber, Facey | Office of the U.S. Trustee |
| | White River Junction, VT | & Goss, PC | Albany, NY |
| | *For the Debtor* | Rutland, VT | *For the U.S. Trustee* |
| | | *For the Moving Creditor* | |

**MEMORANDUM OF DECISION**
**GRANTING CREDITOR'S SUPPLEMENTAL MOTION FOR ADEQUATE PROTECTION**

The issue of adequate protection is one that has been percolating between the Debtor, R & G Properties, Inc., and its one and only secured creditor, Capmark Finance, Inc. ("Capmark"), since well before the Debtor filed for chapter 11 bankruptcy relief. The Court addresses today Capmark's fourth request for adequate protection filed in this case. For the reasons set out below, the Court grants the motion and directs that Capmark be accorded a lien on all "surplus rents" currently collected by the Receiver, that the Debtor may not use those funds without either Capmark's approval or a Court Order.

**BACKGROUND**

An abridged version of the case history is necessary to set the stage for this Memorandum of Decision. On September 17, 2008, the day this case was filed, John Wilking (the "Receiver") had been operating the Debtor's business (five trailer parks) pursuant to a state court order that had been entered in the course of a long and contentious foreclosure proceeding between Capmark and R&G Properties. In state court, the Receiver had been making what were, in essence, mortgage payments to Capmark on a sporadic basis. Two days into the bankruptcy case, Capmark filed an Emergency Motion for Waiver of the § 543 Turnover Requirement (doc. # 6), in order to keep the Receiver in place and to keep the Debtor from operating the business. Three days later, the Debtor filed an opposition to that motion (doc. # 21), and an Emergency Motion to Use Cash Collateral (doc. # 23). After an expedited preliminary hearing, the Court entered an interim Order (doc. # 25) granting Capmark's emergency motion to waive the requirement that the Receiver turn over the business to the Debtor, for sixty days, and denying the Debtor's motion to use cash collateral during that same period.

1

On November 18, 2009, the Court held a final hearing on the Motion for Turnover. At the conclusion of the hearing, the Court authorized the parties to file briefs and indicated it would issue a ruling and address cash collateral issues, if still outstanding, on November 21st. Just prior to the hearing, Capmark filed an objection and opposition to the Debtor's emergency application for use of cash collateral (doc. # 50). In that filing, Capmark made its first request for adequate protection: it sought payments of $16,303 per month, the monthly payment called for in the Note, as compensation for the Debtor's use of Capmark's cash collateral to operate the Debtor's business. Id. at 4. Ultimately, that motion was never ruled on because the Court granted the Debtor's Motion for Turnover (doc. # 59). Capmark then moved for a stay pending appeal in this Court, and this Court denied it. Capmark next moved for a stay pending appeal in the District Court and the District Court granted the stay. See doc. ## 51, 52, 55, 56, 57, 61.

Capmark made its second request for adequate protection in January 2009, as an add-on to its Objection to the First Interim Fee Application of the Debtor's Attorney (doc. # 79). The thrust of Capmark's argument was that it objected to the Debtor using its cash collateral to pay the Debtor's attorney's fees. That became a moot point when the Debtor confirmed that the source of payment for these fees was from a third party, not from the Debtor's operating income.

Subsequently, in March 2009, Capmark filed a motion seeking, in the alternative, an order dismissing the chapter 11 case or granting relief from stay, for cause, based primarily upon the Debtor's alleged bad faith in filing for Chapter 11 relief. Capmark alleged, as an incidental aspect of its argument, that it was entitled to relief, in part, due to the Debtor's failure to provide it with adequate protection (doc. # 111, p. 13). Although the Court did not treat this motion as one for adequate protection per se, on April 16, the Court entered an Order (doc. # 147) denying both dismissal and relief from stay, and addressed Capmark's adequate protection argument as follows:

> [T]he Receiver has remained in control of the Debtor's assets and continues to exercise his judgment as to how to manage the parks, what rent to charge and what bills are paid – including whether Capmark is paid on its secured debt. The Court will not find the Debtor to have acted in bad faith based upon the lack of payments to Capmark under these circumstances (especially since Mr. Rouleau testified at the March 31st hearing and his attorney stated on the record that if the Debtor were allowed to resume possession and control of its operations, it would make payments on its secured debt).
>
> Moreover, the Creditor's position is undercut by the fact that it has taken no affirmative steps to compel the Receiver to service its secured debt (i.e., to make adequate protection payments in the relief from stay context). In response to a direct question by the Court, Capmark's counsel acknowledged at the March 31st hearing that although the Receiver is holding approximately $70,000 in funds, Capmark has made no application to compel the Receiver to make payments to Capmark. It

2

pointed to the Court's January 28, 2009 Order (regarding extension of the Debtor's exclusivity period) (doc. # 77) as a rationale for its position. That Order stated:

> Capmark is correct that the Receiver is not paying Capmark monthly payments on the mortgage obligation. However, the decision of whether to make those payments lies within the sole discretion and business judgment of the Receiver. Based upon the Receiver's testimony before this Court, neither party should be surprised by this fact as the Receiver made clear that he felt a fiduciary duty to reserve funds for crucial capital improvements that were needed in calendar year 2009.

Id. While the Receiver, in his business judgment, determined that a reserve fund was necessary, that did not in any way foreclose the Creditor from moving for payments on its secured debt. The Creditor did not do so. As a result, Capmark cannot now be heard to complain that it is receiving no payments from a Receiver that it fought to keep in order to manage the parks, blame the Debtor for its lack of payments, and then reasonably expect that fact to weigh in favor of dismissal as evidence that the Debtor cannot show a reasonable likelihood of a successful reorganization.

Apparently in response to this finding by the Court, Capmark filed a motion that presented its third request for adequate protection (doc. # 151) on April 20, 2009. To streamline the resolution of this motion for adequate protection and the Debtor's response thereto (doc. # 160), as well as the Debtor's motion for approval of the Disclosure Statement (doc. # 132) and the objections thereto (doc. ## 155, 159), and Capmark's renewed motion to dismiss (doc. # 159), the Court entered a Sua Sponte Case Management Order (doc. # 162) on May 4, 2009 in which it specified, inter alia, that if Capmark wished to pursue its motion for adequate protection, it was to clarify three issues, explaining its right to adequate protection in light of the fact that the Debtor was not operating the business, the impact of the state court order directing the Receiver to cease making payments to Capmark, and the method by which it was computing the amount of adequate protection payments needed to protect its position from deteriorating. Id. at p. 2.

On May 26, 2009, Capmark filed its fourth request for adequate protection, captioned as a Supplemental Motion for Adequate Protection (doc. # 178), which incorporates by reference the allegations of its prior Motion for Adequate Protection (doc. # 151). The Debtor filed an opposition to Capmark's Supplemental Motion (doc. # 183), which incorporated its opposition to the earlier motion for adequate protection (doc. # 160).

## JURISDICTION

This Court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334 and 157(b)(2)(L)&(M).

## ISSUE PRESENTED

3

The issue presented is whether Capmark is entitled to adequate protection under § 361 and, if so, in what form.

## DISCUSSION

In its Supplemental Motion, Capmark seeks "adequate protection payments and replacement liens as adequate protection for the continued use of its cash collateral for the operation and maintenance of the Debtors' five mobile home parks" (doc. # 178). Capmark points out that the 2006 state court order appointing the Receiver contained a provision that allowed the Receiver to make payments to Capmark "to be applied to the mortgage debt, in such amounts as the Receiver may deem reasonable" (id. p. 2). Capmark also mentions, for the first time in its adequate protection arguments, that the state court had, in September 2008, issued an entry order which stated that, as of that date, the Receiver should make no further payments to Capmark, except upon specific authorization of the court, to enable the court to compute the amount due for purposes of the final foreclosure judgment and decree (id. p. 8).

The Receiver continues to manage and maintain the Debtor's property. Capmark has not objected to the use of its cash collateral "provided that the cash collateral is being utilized by John Wilking, of Neville Companies, as Receiver, in the ordinary course of managing and operating the parks." Id. However, to the extent the Debtor expends income derived from rents, i.e., Capmark's cash collateral, "outside the ordinary course of managing and operating the parks," Capmark asserts that it is

> entitled to just compensation – monthly payments in at least the equivalent that it was receiving from the State Court appointed Receiver prior to the bankruptcy filing – a replacement lien on incoming rents, an administrative claim in the amounts funded by Capmark's collateral for the preservation of the value of the assets of the Estate which benefits all of the Debtor's creditor [sic]. . .

(Id., p. 5). At the time Capmark filed its April 2009 Motion for Adequate Protection, the Receiver had accumulated $109,119.64 in surplus rents, which had been set aside in a reserve fund for capital improvements and emergencies. By the time Capmark filed its Supplemental Motion, the reserve fund balance had grown to $134,441.05 (doc. # 178, p. 5). Capmark argues that it not only has a security interest in the Debtor's assets, but the Mortgage Security Agreement and Assignment of Leases and Rents provides that the Debtor unconditionally assigned to it "all existing and future Leases, Rents and Profits…" Id. at p. 4, n.5. Capmark insists that it bargained for and received a security interest in the rents, which constitutes separate collateral from the mortgage on the real property; that $134,441.05 in surplus rents has been set aside and is not necessary for operation of the parks; and that it is entitled to adequate protection payments for the continued use of its cash collateral (id., pp. 4-5). It seeks payment of $22,000 per month nunc pro tunc from the September 17, 2008 petition date (doc. # 151) or, at the very least, from November 6, 2008, fifty days after the state court's September 15, 2008 Order fixing the amounts due to

4

Capmark.[1] This monthly figure is based upon Capmark's calculation that the average monthly payment the Receiver made to Capmark in the year prior to the Debtor filing bankruptcy was approximately $22,000 (doc. # 151 p. 4).

Under § 363(c)(2), a debtor in possession may not use cash collateral[2] "unless each entity that has an interest in such cash collateral consents; or the court, after notice and a hearing, authorizes such use…" § 363(c)(2)(A), (B).

The Second Circuit has described the context in which a creditor may seek adequate protection:

> The filing of a Chapter 11 bankruptcy petition triggers an automatic stay of any judicial proceeding or other act against the property of the estate that was or could have been commenced before the filing of the petition. When the automatic stay endangers "an interest of an entity in property" of the estate, that entity may receive 'adequate protection' in the form of cash payments, a lien, or 'such other relief. . . as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.' . . . The adequate protection provision of 11 U.S.C. § 361 protects only secured creditors.

New England Dairies, Inc. v. Dairy Mart Convenience Stores, Inc. (In re Dairy Mart Convenience Stores, Inc.), 351 F.3d 86, 90 (2nd Cir. 2003). The Bankruptcy Code "requires the bankruptcy court, when requested by an entity that has an interest in property proposed to be used by the debtor, to prohibit such use, or to condition it on the provision of 'adequate protection' -- which means essentially to provide payments up to the value of the interest. 11 U.S.C. §§ 361, 363(e)." In re Chateaugay Corp., 94 F.3d 772, 775 (2d Cir. 1996). Adequate protection "is designed to protect a secured creditor. . . against any decrease in the value of its collateral which may result from depreciation, destruction, or the debtor's use of the collateral." Volvo Commercial Finance LLC the Americas v. Gasel Transp. Lines, Inc. (In re Gasel Transp. Lines, Inc.), 326 B.R. 683, 691-92 (6th Cir. BAP 2005). "It also is generally accepted that the [adequate protection] concept requires the debtor to propose some form of relief that will preserve a secured creditor's interest in the collateral." Lend Lease v. Briggs Transp. Co. (In re Briggs Transp. Co.), 780 F.2d 1339, 1344 (8th Cir. 1985). "It is common ground that the 'interest in property' referred to by § 362(d)(1) includes the right of a secured creditor to have the security applied in payment of the debt upon completion of the reorganization; and that that interest is not adequately protected if the security is depreciating during the term of the stay." United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd., 484 U.S. 365, 370 (1988). Pursuant to § 362(g), the debtor bears the burden of proving that the creditor is adequately protected. In re Cason, 190 B.R. 917, 923 (Bankr. N.D. Ala. 1995).

Although Capmark has not alleged that the Receiver has not maintained its collateral (the trailer

---

[1] Capmark calculates the 50 day period by adding the 20 days after the State Court's September 15, 2008 Order in which it was to file its final accounting, plus the Debtor's 30 day redemption period (doc. # 178, p. 9).
[2] Cash collateral means "cash. . .or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes. . . rents." § 363(a).

park properties), it does assert that its position as a secured creditor has diminished by virtue of the Debtor's failure to make any payments to it since the filing of the bankruptcy case.³ In the April 2009 motion, it was not clear whether Capmark was basing its adequate protection argument on the diminished value of the real property alone or, in addition, to its allegedly diminished interest in the rents (doc. # 151). In the <u>Sua Sponte</u> Case Management Order, the Court pointed out that additional information was needed from Capmark concerning the value of the property to provide a basis for computing to what extent Capmark's interest was deteriorating (doc. # 162, p. 2). Capmark did not provide those figures in its Supplemental Motion; and the only reference to the value of property <u>vis a vis</u> adequate protection is in the Debtor's filings where it asserts that the secured portion of Capmark's claim on the real property remains "fairly stable" (doc. # 160, p. 3). Accordingly, the Court considers Capmark's adequate protection argument based on diminution of the value of its real property waived, and focuses on what appears to be the actual point of its motion: whether and to what extent Capmark is entitled to a post-petition lien on rents as part of its adequate protection. As noted above, Capmark has consented to the rents being used by the Receiver in the day-to-day operation of the mobile home parks, but it has not consented to those rents being used outside of the normal course of business. Because the Receiver has collected and set aside $134,441.05 in surplus rents, Capmark views that amount as its cash collateral and has not consented to the use of that amount for any purpose other than managing and operating the parks.

"A secured creditor holding both a mortgage securing a debt on a parcel of real property, and a perfected security interest in rents derived therefrom, holds two distinct interests. . . . The value of each of those interests must be separately considered and, if necessary, adequately protected." <u>In re 499 W. Warren St. Assocs. Ltd. P'ship</u>, 142 B.R. 53, 56 (Bankr. N.D.N.Y. 1992) (Gerling, J.) (citations omitted). Further, "[u]nder appropriate circumstances, use of a portion of the rental income to pay the reasonable and necessary operating expenses of the property satisfies this requirement." <u>Id.</u> In <u>499 W. Warren</u>, the bankruptcy court pointed to several decisions where courts had held that application of rent income "solely" to maintain and repair property to prevent further deterioration would enhance the property's value, and that not diverting any of those funds to the debtor would ensure that the mortgagee's

---

³ As noted above, Capmark raised its first and second claims for adequate protection as a reaction to, and as support for its opposition to, motions by the Debtor (the first being the turnover of all operating income to the Debtor's unfettered control and the second being the Debtor's use of operating income to pay attorney's fees). Once it became clear that the Debtor was not going to have control over operation of the business, and the funds for payment of attorneys' fees were coming from a third party, respectively, Capmark's two reactive requests for adequate protection became moot. The first motion for adequate protection that Capmark initiated proactively was, in fact, its third request. The Court denied that third (April 2009) motion for adequate protection because it was brought in the context of Capmark's Motion to Dismiss or Alternatively for Relief from Stay, based upon its failure to carry its burden of proof. All of these requests for relief were premised upon a finding that the Debtor had acted in bad faith in filing for bankruptcy relief, and Capmark failed to prove bad faith. Hence, to a certain extent, this is the first time the Court has had before it a § 361 motion from Capmark not limited by its placement in motions seeking primarily other relief.

investment was adequately protected. Id. (citing In re Pine Lake Village Apartment Co., 16 B.R. 750, 756 (Bankr. S.D.N.Y. 1982) and In re Willowood East Apartments of Indianapolis, 114 B.R. 138, 143-44 (Bankr. S.D. Ohio 1990)). The court observed that if a portion of the rents is reinvested in the property for operational expenses, those funds "contribute to the generation of additional rents upon which the creditor's security interest subsequently attaches." Id. at 57. Judge Gerling held that because the subject property was well-maintained, showed no significant signs of deferred maintenance, and had an above average occupancy rate, the use of a portion of the rents to operate the property adequately protected the mortgagee's interests. He ordered that the debtor could not use the excess rents to make any payments inconsistent with operation and management of the property without first obtaining the creditor's consent or the court's approval. Id. at 58-59.

In this case, the creditor seeking adequate protection is likewise undersecured and has a perfected security interest in the rents. The Receiver's use of a portion of the Debtor's rental income here to pay the trailer parks' operating expenses constitutes adequate protection. 499 W. Warren, 142 B.R. at 58. The question outstanding is whether, by amassing almost $135,000 in surplus rents, Capmark's position is deteriorating by not having access to that money to apply to payment on its debt.[4]

Courts assess the application of future rents to property maintenance in the context of adequate protection requests somewhat differently. Some courts hold that a creditor is adequately protected if the rents are used to pay the operating expenses and required maintenance. See In re Coventry Commons Assocs., 134 B.R. 606, 611 (Bankr. E.D. Mich. 1991) ("[p]rotecting the property itself is the best way to protect [creditor's] rights in future rents"); In re Marion St. P'ship, 108 B.R. 218, 225 (D. Minn. 1989) (evidence showing rents were not being dissipated but were used to pay operating expenses and repairs; therefore creditor did not establish decline in value of its collateral or that it was not being adequately protected concerning the rents). Another court has taken a more nuanced view. In Travelers Ins. Co. v. River Oaks Ltd. P'ship. (In re River Oaks Ltd. P'ship.), 166 B.R. 94 (E.D. Mich. 1994), the district court did not "believe the mere fact that the rental income [was] used to pay the necessary expenses of operating and maintaining the property or that the property is adequately maintained and not depreciating, in and of itself, provide[d] the adequate protection required under § 363 for the security interest covered by the assignment of rents." Id. at 99. The court considered "diversion of any portion of the rents to a party other than the secured party [was] clearly a diminution of the secured party's interests in the

---

[4] Contrary to Capmark's assertion that "there is no provision in the Debtor's Amended Plan. . .dated May 25, 2009, accounting for the idle Rents" (doc. # 178, p. 10), the Amended Plan states that the Debtor proposes to allocate $90,000 of the $134,441.05 for a sewer connection at one of its parks and to segregate that money in a separate account specifically designated for maintenance and capital improvements, and "[a]ny remaining funds not required for ordinary course administrative expenses will also be segregated, to be used for maintenance, repairs, and general upkeep" (doc. # 175, p. 9). However, the Amended Plan does not, as Capmark observes, provide that Capmark retains its security interest in future rents.

assignment of rents portion of the security." Id. (quoting Willowood Apartments, 114 B.R. at 145). Willowood's analysis is helpful, as it viewed any use of net rents (the amount of rent remaining after regular and reasonable operating expenses are paid) as "caus[ing] a decrease in the value of [the creditor's] interest in property in which the estate has an interest," and held that "[a]ny decrease attributable to the Debtor's usage, therefore, must be protected by cash payments from another source, an additional or replacement lien, or other such indubitable equivalent. 11 U.S.C. § 361." Id.

The Court finds that Capmark likewise must be provided with adequate protection as to the Debtor's net (or surplus) rents and that the Debtor has not demonstrated that this discrete component of Capmark's interests is adequately protected. The Debtor may not use Capmark's cash collateral without either the creditor's consent or court approval, and court approval requires a finding of adequate protection. 11 U.S.C. § 363(c)(2). Capmark has only consented to the use of cash collateral to the extent it is used in the operation of the trailer parks; it has specifically objected to the Debtor's use of cash collateral that is in the reserve account (the "surplus rents"). Moreover, neither the Amended Plan nor the Amended Disclosure Statement provide that Capmark will retain its security interest in future rents (an argument that appears to be directed to what would happen to the surplus rents if the Court confirms the Debtor's Amended Plan). Capmark is entitled to a lien on all surplus rents, including those currently held in the Receiver's reserve account, and the surplus rents may not be used without either Capmark's express consent or the Court's approval.

## CONCLUSION

For the reasons set out above, the Court finds that Capmark is entitled to adequate protection of its interest in all cash collateral, including the surplus rents, the Debtor has not demonstrated that it has provided Capmark with adequate protection with respect to the surplus rents, and a continuing lien on surplus rents is the most appropriate way to provide adequate protection as to the rents not used for operating expenses. To ensure that Capmark's interest in the surplus rents, as part of its cash collateral, is protected, the Debtor and Receiver are prohibited from using any of the Debtor's rental income outside the ordinary course of the Debtor's business unless they receive the consent of Capmark or an Order of the Court.

This constitutes the Court's findings of fact and conclusions of law with respect to all of Capmark's motions for adequate protection (doc. ## 50, 79, 151, 178) and all of the Debtor's motions for use of cash collateral (doc. ## 23, 53).

July 6, 2009  
Rutland, Vermont

Colleen A. Brown  
U.S. Bankruptcy Judge