## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF VERMONT

Filed & Entered
On Docket
July 6, 2009

_____

In re:

    **R & G Properties, Inc.,**                                                         **Chapter 11 Case**
                 **Debtor.**                                                                **# 08-10876**

_____

*Appearances:*  Michelle Kainen, Esq.     Heather Z. Cooper, Esq.     Kevin Purcell, Esq.
                             Kainen Law Office, PC       Kenlan, Schwieber, Facey     Office of the U.S. Trustee
                             White River Junction, VT         & Goss, PC                 Albany, NY
                             For the Debtor              Rutland, VT                  For the U.S. Trustee
                                                                For the Moving Creditor

## MEMORANDUM OF DECISION
### DENYING DEBTOR'S MOTION TO APPROVE ADEQUACY OF DISCLOSURE STATEMENT

On May 25, 2009, the Debtor filed an Amended Disclosure Statement (doc. # 176); the next day, the Debtor filed a Motion to Approve the Amended Disclosure Statement (doc. # 177). The issue before the Court is whether the Amended Disclosure Statement must be denied approval due to the fact that it accompanies a plan which is ineligible for confirmation by virtue of its misclassification of Capmark's unsecured claim. If so, the many other arguments presented by the parties become moot. For the reasons set forth below, the Court answers the question in the affirmative.

### JURISDICTION

This Court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334 and 157(b)(2)(A)&(L).

### DISCUSSION

THE PARTIES' ARGUMENTS

On June 8, 2009, the U.S. Trustee filed an Opposition to the Adequacy of the Information in the Debtor's Disclosure Statement (doc. # 182), presenting several technical and legal arguments, all of which culminate in an assertion that the Amended Disclosure Statement should be denied approval because it describes an unconfirmable plan, and generally fails to meet the standard of "adequate information," as defined in § 1125.[1] The U.S. Trustee's primary argument is that the Debtor's Plan is fatally flawed

---

[1] This references and reiterates many of the objections the U.S. Trustee had raised with respect to the Debtor's original Disclosure Statement, see doc. # 159. By way of background: the Debtor filed its first Disclosure Statement (doc. # 132) on March 16, 2009; on May 7, 2009, after considering the objection of the U.S. Trustee, as well as the objection of Capmark (doc. # 155), the Court entered a Sua Sponte Case Management Order (doc. # 162) which, among other things, denied approval of the Debtor's Disclosure Statement, cancelled the hearing that had been set on the Disclosure Statement, and granted the Debtor an opportunity to amend the Disclosure Statement. The Amended Disclosure Statement is now before the Court.

because it separately classifies Capmark's unsecured deficiency claim in a class distinct from all other unsecured claims. The U.S. Trustee also posits that: (1) the discharge provision in both the Plan and the Amended Disclosure Statement do "not comport with 11 U.S.C. § 1141(b)," and hence cannot be confirmed or approved as filed; and (2) the Debtor's failure to provide notice of this bankruptcy case filing to the Internal Revenue Service ("IRS") in compliance with this Court's local rule, Vt.LBR 1007-3(a)(1)(A), undermines the confirmability of the Plan.

On June 8, 2009, Capmark too filed an Objection to the Adequacy of the Debtor's Amended Disclosure Statement (doc. # 184), which also focused primarily on the Debtor's effort to manipulate the vote by improperly classifying Capmark's unsecured claim separate from the other unsecured claims.[2] Capmark raised several other objections, including: (i) the Debtor failed to amend its schedules and matrix to include the IRS, (ii) the Amended Disclosure Statement accompanies a plan that is not feasible, (iii) the Amended Disclosure Statement lacks verifiable information regarding the Debtor's compliance with applicable tax obligations, its management agreement, and its computation of the plan distributions and operating projections, (iv) the Debtor is proposing to pay an inadequate interest rate on Capmark's secured claim, and (v) the Debtor is not properly protecting Capmark's lien interest. Id. Based on these defects, Capmark insists that the Disclosure Statement is inadequate and the Debtor's motion to approve the Disclosure Statement should be denied. Id.

On June 15, 2009, the Debtor filed a Response to Objections to Amended Disclosure Statement (doc. # 187), addressing each of the alleged deficiencies described by Capmark and the U.S. Trustee.[3] With regard to the adequacy of notice to the IRS and compliance with the local rules' requirement that the IRS be on the matrix, the Debtor stated that it had been in communication with the designated IRS bankruptcy representative, there was no actual lack of notice to the IRS, the Debtor is in compliance with all tax liabilities and the Debtor would amend the matrix to add the IRS "promptly." Id, p. 1. With respect to the other objections, the Debtor asserted that the Amended Disclosure Statement (i) (at Appendix C) clearly outlines the Debtor's intention with regard to the management of the reorganized entity, (ii) accurately and sufficiently sets out the calculation of the dividend to unsecured creditors, (ii) has a sound reason for offering cash flow projections that are not consistent with the historical figures,  (iii) does not violate the absolute priority rule, (iv) may provide for the termination of the receivership, (v) sets forth the proper interest rate for the Capmark secured claim, (vi) does not seek to avoid the mortgage of Capmark,

---

[2] This objection likewise reiterates many of the objections Capmark had previously raised to the initial Disclosure Statement, see doc. # 155.

[3] On June 22, 2009, the Internal Revenue Service filed a Response to the Debtor's Amended Disclosure Statement (doc. # 195), in which it indicated the IRS does not oppose the Debtor's motion to approve the Amended Disclosure Statement notwithstanding the Debtor's failure to provide the notice, or include it on the matrix, required by the Local Rules. The Court need not address this filing since the issue of the adequacy of information is disposed of on other grounds.

2

and (vii) is feasible. With regard to the ultimate issue, the Debtor's classification of Capmark's unsecured claim in its own class, R&G asserted that the cases cited by Capmark were inapposite and that its classification scheme was proper because, unlike the holders of the other unsecured claim, Capmark "has multiple potential opportunities for recovery of its unsecured claim." Id at p. 4

<u>DEBTOR'S PROPOSED TREATMENT OF THE CREDITORS' CLAIMS</u>

In this case, there are six creditors and one shareholder: Ran-Mar Corporation, R&G Properties, II, Inc., R&G Properties, III, Inc., the Biederman Law Office, Lauren Kolitch, Lisa Chalidze, and Capmark (doc. # 1 at schedules D and F, and the matrix). In its Amended Plan, the Debtor proposes to treat the claims of its creditors through six classes (doc. # 176, p. 4, 14-15). The first class is for administrative expenses and is projected to include only the Debtor's attorneys' fees. The Debtor estimates the total due to this class will be $20,000 and shall be paid in full upon the effective date of the Amended Plan. (<u>Id.</u> p. 14). The second class is for secured claims and includes only the claim of Capmark in the amount of $2,455,000.00. (The Debtor arrives at this amount for Capmark's secured claim, under § 506(a), by asserting this to be the value of the Debtor's property (Capmark's collateral).) The Debtor proposes to pay this sum at an interest rate of 6%, amortized over a period of 25 years, with monthly payments of $15,818, and a balloon payment in the amount of $2,315,654 in the thirty-sixth month following the effective date of the Amended Plan (<u>id.</u>, pp. 14-15). The third class is the unsecured claim of Ran Mar, Inc, the parent corporation of the Debtor and holder of a junior, and wholly unsecured, mortgage. The Debtor proposes that Ran-Mar receive no payments under the Amended Plan (<u>id.</u> p. 15). The fourth class is the unsecured portion of the Capmark claim, <u>i.e.</u>, the difference between Capmark's total claim and the secured portion treated in the second class. The Amended Plan purports to classify this claim distinct from the other unsecured creditors because, unlike the other general unsecured claims,

> Capmark has filed suit in Vermont State Court against the debtor's president, Randy Rouleau, seeking to enforce the terms of a conditional personal guarantee. Capmark has also filed a claim on a lender's title insurance policy regarding title issues on one of the mobile home parks. That claim remains pending. Based upon Capmark's assertion that its deficiency may be satisfied by other means, the deficiency claim has been separately classified by the debtor.

<u>Id.</u>. The fifth class includes the general unsecured claims of the three parties who rendered pre-petition legal services to the Debtor (attorneys Biederman, Chalidze, and Kolitch) and who will be paid a dividend equal to 3.383% of their claims (<u>id.</u>). The sixth and final class includes the sole equity security holder of the Debtor, Ran-Mar, Inc. Under the terms of the Amended Plan, Ran-Mar, Inc. will surrender its current stock and receive new stock in the reorganized Debtor in exchange for a $60,000 cash payment which the Debtor will use to satisfy the claims of classes one, four and five (<u>id.</u>).

<u>THE COURT'S ANALYSIS</u>

The statutory definition of "adequate information" leaves the bankruptcy court wide discretion to

determine on a case by case basis whether a disclosure statement contains adequate information. <u>In re Texas Extrusion Corp</u>., 844 F 2d 1142, 1157 (5th Cir. 1988).

The fundamental and most critical issue raised by the objections is whether the Amended Disclosure Statement accompanies a plan that cannot be confirmed. If so, the Amended Disclosure Statement must be denied approval in order to avoid a costly and futile solicitation process. <u>See</u> <u>In re Copy Crafters Quickprint, Inc</u>**.,** 92 B.R. 973, 980 (Bankr. N.D.N.Y. 1988) ("Submitting the debtor to the attendant expense of soliciting votes and seeking court approval on a clearly fruitless venture would be costly and it would delay any possibility of a successful reorganization.") (citing <u>In re Pecht</u>, 53 BR 768, 768-69 (Bankr. E.D.Va. 1985)).

The Second Circuit has spoken in a loud and clear voice on the issue of separate classification in Chapter 11 cases and plans:

> [A]pproving a plan that aims to disenfranchise the overwhelmingly largest creditor through artificial classification is simply inconsistent with the principles underlying the Bankruptcy Code. A key premise of the Code is that creditors holding greater debt should have a comparably greater voice in reorganization. Thus, although Debtor protests that prohibiting it from separating the unsecured claims of the FDIC from those of its trade creditors will effectively bar single asset debtors from utilizing the Code's cramdown provisions, Debtor fails to persuade that a single-asset debtor should be able to cramdown a plan that is designed to disadvantage its overwhelmingly largest creditor. Chapter 11 is far better served by allowing those creditors with the largest unsecured claims to have a significant degree of input and participation in the reorganization process, since they stand to gain or lose the most from the reorganization of the debtor. This Court thus holds that separate classification of unsecured claims solely to create an impaired assenting class will not be permitted; the debtor must adduce credible proof of a legitimate reason for separate classification of similar claims.
>
> In the instant case, Debtor was unable and failed to adduce credible proof of any legitimate reason for segregating the FDIC's unsecured claim from the unsecured claims of [its] trade creditors.

<u>Boston Post Rd. Ltd. P'ship v. FDIC (In re Boston Post Road Ltd. P'ship)</u>, 21 F. 3d 477, 483 (2d Cir 1994). Based upon the record – and every utterance and filing from Capmark since the inception of this case – there can be no doubt that Capmark will vote against the Amended Plan. Its claim is more than 100 times the size of the other three unsecured claims. In light of the disproportionate size of its unsecured claim as to the claims of the other three members of that class (it holds about 97% of the total unsecured debt), if Capmark were included in the class of general unsecured claims, even if the other three creditors voted in favor of the Amended Plan, that class would not have the votes to constitute an accepting class pursuant to § 1126(d). The U.S. Trustee and Capmark argue that the only credible basis for the Debtor's separate classification of Capmark's claim is to avoid having the class of unsecured creditors vote against the Plan.

The Bankruptcy Court in <u>Pecht</u> observed:

4

> If the Court can determine from a reading of the plan that it does not comply with § 1129 of the Bankruptcy Code, then it is incumbent upon the Court to decline approval of the disclosure statement and prevent diminution of the estate. Although a debtor may not be required at the hearing on the disclosure statement to show that the plan conforms to all the requirements mandated by § 1129, should the contents of the disclosure or the plan reflect an inability to comply with those requirements, the Court may decline approval of the disclosure statement.

Pecht, 57 B.R. at 139. "Only where the disclosure statement <u>on its face</u> relates to a plan that cannot be confirmed does the court have an obligation not to subject the estate to the expense of soliciting votes and seeking confirmation of the plan . . . Allowing a facially nonconfirmable plan to accompany a disclosure statement is both inadequate disclosure and a misrepresentation." <u>In re Dakota Rail, Inc.</u>, 104 B.R. 138, 143 (Bankr. D.Minn. 1989) (citing <u>Pecht</u>, 57 B.R. at 139).

The Court is not persuaded by the Debtor's recourse argument that there is in fact a sound basis for the separate classification of the Capmark unsecured claim. The Debtor has presented no evidence whatsoever that Capmark has any reasonable likelihood of recovering from any source other than the Debtor's property. Any recovery in state court against other parties is mere speculation, and an insufficient basis for a separate classification. Moreover, the Debtor has pointed to no information in the record that indicates the amount of Mr. Rouleau's personal assets, much less if they would be sufficient to provide a recovery that would distinguish Capmark's unsecured obligation from those held by the other unsecured creditors. Courts in the Second Circuit have rejected attempts to distinguish deficiency claims from other unsecured claims on the grounds that the undersecured creditor may have a separate right of action against a debtor's principal or other non-debtor third parties. <u>See</u>, e.g., <u>In re 500 Fifth Ave. Assocs.</u>, 148 B.R. 1010, 1018-19 (Bankr. S.D.N.Y. 1993).

From the record in this case and after considering extensive arguments by the parties, the Court concludes that the only credible rationale for the Debtor's separate classification of the unsecured portion of Capmark's claim is to create an assenting impaired class. To separately classify a claim "to gerrymander an affirmative vote is impermissible." <u>Boston Post Rd. Ltd. P'ship</u>, 21 F. 3d at 481 (citing <u>In re Phoenix Mutual Life Ins. Co. v. Greystone III Joint Venture (In re Greystone III)</u>, 995 F. 2d 1274, 1279 (5th Cir. 1991)). The Debtor has cited <u>Steelcase, Inc. v. Johnston (In re Johnston)</u>, 21 F.3d 323 (9th Cir. 1994) to support the proposition that "separate classification of one unsecured claim from others is permissible" (doc. # 187, p. 4). However, that case is inapposite for a number of reasons. The creditor's position and the plan proposed in that case were wholly distinguishable from those in this case, as was the standard of review applied to the lower courts' decisions by the Ninth Circuit. <u>Id.</u> at 326-27. But most importantly, this Court must apply the Second Circuit's analysis in <u>Boston Post Rd.</u> to guide its examination of the issue; Ninth Circuit cases, while analytically interesting, are not authoritative here.

5

## CONCLUSION

      After due consideration of all of Amended Disclosure Statement, the Amended Plan, and the objections and responses filed by the Debtor, the U.S. Trustee, the IRS, and Capmark in this case, the Court finds that the Debtor has not sustained its burden of setting forth adequate information and the Amended Disclosure Statement fails to satisfy the adequate information standard of § 1125, because it accompanies a Plan that cannot be confirmed pursuant to 11 U.S.C. § 1129, due to improper classification of Capmark's unsecured claim. Having made this finding, the Court need not address the remaining objections to the Amended Disclosure Statement.

      This constitutes the Court's findings of fact and conclusions of law with respect to the adequacy of information in the Debtor's Amended Disclosure Statement.

July 6, 2009  
Rutland, Vermont

_____  
Colleen A. Brown  
United States Bankruptcy Judge